**In the Matter of FUZZY THURSTON'S EAU CLAIRE LEFT GUARD, INC., Debtor.**

**Bankruptcy No. MM7–79–01416.**

United States Bankruptcy Court, W.D. Wisconsin.

Sept. 21, 1983.

---

· Roger Schnitzler, Van Metre, Hanson, Clarke, Schnitzler & Meyer, Madison, Wis., for debtor.

William J. Rameker, Murphy, Stolper, Brewster & Desmond, S.C., Madison, Wis., trustee.

Richard Congdon, Congdon & Ward, S.C., Waukesha, Wis., for claimants Edward O. Luedtke, James Hummert and Peyton Muehlmeier, d/b/a Midway Motor Lodge.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Claimants Edward O. Luedtke, James Hummert and Peyton Muehlmeir, d/b/a Midway Motor Lodge ("Midway") have petitioned the court for allowance of their claim as an administrative expense in this bankruptcy proceeding.

The debtor, Fuzzy Thurston's Eau Claire Left Guard, Inc., leased a restaurant facility from Midway. On March 10, 1979, the then-existing lease was modified to provide that Midway would act as guarantor on a loan by the debtor, in the amount of $35,000.00. The agreement provided that a default on repayment of the loan would constitute a default on the lease. Shortly thereafter the debtor obtained a $35,000.00 bank loan.

On November 16, 1979 debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. At that time the debtor was delinquent in lease payments to Midway for the months of September, October and November of 1979—totalling $26,104.20. As of the date of filing, property taxes in the amount of $6,625.60 had accrued. The total taxes due for the year amounted to $7,604.85. The 1979 taxes were paid by Midway early in 1980, after the debtor had filed his chapter 11 petition.

On January 31, 1980, Midway sought relief from the automatic stay, in order to evict the debtor from the leased premises. That application was granted on April 4, 1980. The debtor then sought reinstatement of the stay, and a hearing was scheduled for June 11, 1980. However, the parties having reached an agreement, a stipulation was read onto the record on July 11, and no hearing was held. That stipulation provided, *inter alia,* that the debtor would clean and repair the restaurant facilities within 90 days, and that amounts due under the lease, approximately $30,000.00, would be paid within 30 days. Midway agreed to drop its state court eviction action. The stipulation was agreed to be an addendum to the lease. It was contemplated that the agreement would require court approval:

> It is further agreed that Left Guard shall agree to take reasonable steps to obtain Court approval of this agreement within 30 days and shall not seek any further relief against our institution should there be a default.

(Stipulation at 8.) Notice of the proposed agreement was apparently sent to creditors, but the court did not sign any order approving the agreement. The debtor failed to comply with the stipulation, and notices of

default were mailed on August 13 and September 11 of 1980.

On April 6, 1981, a trustee was appointed to replace the debtor in possession. Midway then sought turnover of the leased premises based upon the defaults. The court held that the trustee was not bound by the terms of the lease and stipulation entered into by the debtor in possession. *In Re Fuzzy Thurston's Left Guard of Eau Claire,* 11 B.R. 502 (Bkrtcy.W.D.Wis.1981). On September 18, 1981 the court ordered the trustee to assume or reject the lease within 21 days, and the trustee subsequently rejected the lease. In September of 1981 Midway paid the debtor's $35,000.00 loan which it had guaranteed in the March, 1979 lease modification.

Midway has claimed administrative expenses in the following amounts:

| | |
|---|---|
| Due under lease: | $ 65,039.75 |
| Loan repayment: | 35,000.00 |
| | 100,039.75, |

pursuant to 11 U.S.C. § 503(b)(1)(A) which provides:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

The trustee does not dispute that post-petition rents and taxes paid were necessary costs of preserving the estate. However, the trustee contends that the pre-petition rent, taxes and the $35,000.00 loan guarantee should be treated in the same manner as the claims of other pre-petition creditors. Midway argues that the debtor assumed the lease in the June 11, 1980 stipulation, and therefore all of the terms were binding on the trustee.

Code § 503(b)(1)(A) is intended to enable a debtor to continue operating its business, preserving the estate for the benefit of all its creditors. *In Re Ridgewood Sacramento, Inc.,* 20 B.R. 443, 446 (Bkrtcy. E.D.Ca.1982). A general rule in determining whether a claim arises from preservation of the bankruptcy estate is that only post-petition expenses are entitled to administrative priority. *See, e.g., In Re Hearth & Hinge, Inc.,* 28 B.R. 595, 597 (Bkrtcy.S.D.Ohio 1983); *In Re Fred Sanders Co.,* 22 B.R. 902, n. 2, 9 B.C.D. 677 (Bkrtcy.E.D.Mich.1982). In the present case the debtor's continued operation was made possible by the stipulation reached between the debtor and Midway. The critical question, though, is whether the debtor's pre-petition [1] obligations can be "carried over" by means of that post-petition stipulation. In arguing that the debtor assumed the lease obligations by the stipulation, Midway has overlooked the requirements imposed by 11 U.S.C. § 365(a) and (b). Those sections provide in part:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

---

1. Although Midway's payment as guarantor was made after filing, pursuant to 11 U.S.C. § 502(e) the claim is treated as a pre-petition claim. As explained in *Collier:*

   > To the extent that the claim of a surety for reimbursement or contribution of payments made after the filing of the case is thus allowable, such claim is treated as though it were a claim in existence before the date of the filing of the petition. It is given no higher status than is the claim of the creditor against the debtor. To give the surety better than pre-petition status merely because he has made a payment to a pre-petition creditor following the filing of the debtor's petition would distort the scheme of the statute in respect of pre-petition claims. and, where appropriate, post-petition administrative claims.

   3 *Collier on Bankruptcy,* ¶ 502.05 at 502–81 (15th ed. 1982).

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

Thus if the debtor decided to assume the lease, it was obliged to cure or provide adequate assurances of cure of pre-petition obligations under its lease, and secure court approval. In the present case, the court never approved the debtor's assumption of the unexpired lease, nor did the debtor ever cure or provide adequate assurance of cure of the defaults. The importance of court approval of assumption was emphasized in *In Re Marple Publishing Co., Inc.*, 20 B.R. 933 (Bkrtcy.E.D.Pa.1982). There, the debtor was in default on rent at the time it filed bankruptcy. The court granted the landlord's motion requiring the debtor to assume or reject the lease. The debtor purported to assume the lease in its chapter 11 plan. No action was taken by the court, however. The bankruptcy court held that absent approval, the assumption was without effect. The court also suggested that without assumption the pre-petition obligations cannot be carried over as an administrative expense:

[W]hile the defendant first sought to assume, then breached (by removing from the premises), and finally sought to reject the lease, none of these actions were with the court's approval. The attempted assumption and the subsequent attempted rejection were, therefore, devoid of legal significance.

To recapitulate: If an unexpired lease is assumed by the debtor in possession and such action is approved by the court, such assumption and approval creates a new administrative obligation of the estate which must be paid as a first priority in distribution. In addition, the debtor in possession must cure any default. But,

lacking the court's approval, none of the above applies and the plaintiff's complaint seeking an order requiring the debtor in possession to cure the prepetition default must be denied.

*Id.* at 935 (footnotes omitted).

Because Midway has failed to show that the following pre-petition obligations arose from preservation of the bankruptcy estate, administrative priority must be denied.

$35,000.00   loan guarantee

26,104.20   pre-petition rent

6,625.60   pre-petition taxes

Midway's claim is allowed administrative priority in the amount of $32,309.95, subject to an apparently uncontested offset of $4,662.21 for September, 1981 room charges.