In re WATERFRONT COMPANIES, INC., a Minnesota corporation, Debtor.

Donald R. JOHNSTON, Trustee of Waterfront Companies, Inc., Plaintiff,

v.

FIRST STREET COMPANIES, a Minnesota partnership; Paul A. Feldman; Dan Christensen; and Universal Lending Corporation, a California corporation, Defendants,

v.

Harry M. WIRTH and Wirth Companies, Inc., Third-Party Defendants.

Bankruptcy No. 4–83–2080.
Adv. No. 4–84–39.

United States Bankruptcy Court, D. Minnesota.

Nov. 8, 1985.

---

Larry B. Ricke, Rodney A. Honkanen, Minneapolis, Minn., for plaintiff.

Lawrence J. Field, Minneapolis, Minn., for defendants.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT TO PLAINTIFF

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on the motion of the plaintiff seeking partial summary judgment. Larry B. Ricke and Rodney A. Honkanen appeared for the plaintiff and Lawrence Field appeared for the defendants. There were no appearances by or on behalf of the third-party defendants.

This order is made pursuant to Bankruptcy Rule 7056 and Fed.R.Civ.P. 56.

### FACTS

The debtor, Waterfront Companies, Inc., filed a Chapter 11 petition on December 21, 1982. In the spring of 1983 it acquired and is now the fee owner of certain real property of approximately 16.5 acres along Washington Avenue and Third Avenue South in Minneapolis which was formerly the site of the Milwaukee Road Railway Depot.

Defendants Paul A. Feldman and Dan Christensen are residents of the state of California and are the owners and officers of the defendant Universal Lending Corporation, a California corporation.

Third-party defendant Harry M. Wirth is an individual who is the majority shareholder of Waterfront and the sole shareholder of third-party defendant Wirth Companies, Inc.

The defendant First Street Companies is a Minnesota partnership formed on approximately May 18, 1983, between Wirth Companies, Inc. and Universal Lending Corporation. Originally Wirth Companies, Inc. was a 55% partner and Universal Lending Corporation a 45% partner. However pursuant to the partnership agreement and by order of the Hennepin County District Court dated June 11, 1985, Universal Lending Corporation became the 55% partner and Wirth Companies, Inc. the 45% partner.

Also on May 18, 1983, an Indemnity and Hold Harmless Agreement was entered into by Wirth, Wirth Companies, Inc., Waterfront Companies, Inc., Christensen, Feldman, and Universal Lending Corporation. Harry Wirth signed for the Wirth Companies, Inc. and Waterfront Companies, Inc.

Christensen and Feldman and therefore Universal Lending Corporation knew that Waterfront Companies, Inc. was in Chapter 11 at the time of the agreement.[1]

The indemnity agreement provided *inter alia:*

---

1. Christensen, Feldman and Universal arranged financing which enabled Waterfront to purchase as debtor in possession the depot property. *See* Finding of Fact No. 7, *Universal Lending Corporation v. Wirth Companies, Inc. and Harry M. Wirth,* File No. 84–12739 (Henn.Cty. Dist.Ct. June 11, 1985).

1) That the Indemnitors will at all times hereafter indemnify, defend and hold harmless the Beneficiaries from any and all liabilities, loss, damage, costs or expenses of whatever kind or nature including without limitation reasonable attorney's fees and cost which the Beneficiaries, or any of them, may sustain or incur as a result of any liabilities or any indebtedness of the Partnership, whether arising out of their status as partners of the partnership or their status as guarantors or accomodation parties to any such obligations or any other basis.

The plaintiff, Donald R. Johnston, was appointed trustee on October 4, 1984, pursuant to 11 U.S.C. § 151104.

Universal Lending, Feldman and Christensen have now filed proofs of claim against the bankruptcy estate, each for $1,650,846.90.

On March 8, 1985, the trustee filed this adversary proceeding seeking a judgment against and an accounting by First Street Companies and a determination that the Indemnity and Hold Harmless Agreement dated May 18, 1983 was void as to the trustee and the estate and disallowance of the claims filed by Christensen, Feldman and Universal. It is on the last two requests that the plaintiff now seeks summary judgment.

## DISCUSSION

Bankruptcy Rule 7056 makes Fed.R. Civ.P. 56 applicable in adversary proceedings. The latter provides in part:

the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

Although the defendants claim that there are issues of fact, as will more fully appear, I have concluded that those facts are not material and have further concluded that the plaintiff is entitled to judgment as a matter of law on the voidability of the indemnity agreement.

The plaintiff claims that the indemnity agreement is void based on various provisions of 11 U.S.C. §§ 363, 364 and 549.[2]

In the first instance the trustee seeks avoidance of the indemnity agreement under § 549(a) which provides:

Except as provided in subsections (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a) (1982).[3] It is clear that the indemnity agreement was entered into after the commencement of the case and §§ 303(f) and 542(c) do not affect this transaction. Likewise, it is conceded by all parties that the court did not authorize the indemnity agreement so the only issue under § 549 is whether or not the agreement was authorized under Title 11.[4] The provisions of Title 11 on which the defendants rely to authorize the indemnity agreement are §§ 363(c)(1) and 364(a). Those are the same two sections that the trustee alterna-

---

2. The plaintiff's original complaint cited only § 549. On October 8, 1985 I granted the plaintiff's motion to amend his complaint to add references to §§ 363 and 364. An amended complaint has never been filed, although apparently it was served on the defendants. A copy of the proposed amended complaint was attached to the plaintiff's motion and it is apparent from the memoranda and the argument of counsel that all parties are discussing the issues raised in the amended complaint. I will therefore discuss them as well.

3. Certain slight changes in § 549(a) were made by Pub.L. 98–353 but effective only in bankruptcy cases filed after October 8, 1984.

4. While the defendants have not really made an issue out of it, it is not entirely clear to me that the indemnity agreement constitutes a transfer of property of the estate which is a requirement for avoidability under § 549(a). However as we will see, that will not be important to the result.

tively alleges as grounds for the voidability of the indemnity agreement.

Section 1101(1) provides that "debtor in possession" means debtor except when there has been a trustee appointed. Up until the appointment of the trustee in October of 1984 the debtor was therefore also the debtor in possession.

Section 1107(a) provides:

subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a) (1982). Thus as the debtor in possession, Waterfront had the rights and powers of a trustee with the limitations noted.

Section 1108 provides "unless the court orders otherwise, the trustee may operate the debtor's business." 11 U.S.C. § 1108 (1982). Therefore up until the appointment of the trustee Waterfront was also authorized to operate the debtor's business.

Limitations on operating the business are set out in §§ 363 and 364:

the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b) (1982).

if the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1) (1982).

if the trustee is authorized to operate the business of the debtor under section 721,

1108, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a) (1982).

Sections 363(b) and (c)(1) read together indicate that the general rule is that use, sale or lease transactions are only authorized after notice and a hearing. Twenty days notice is required to all creditors. Bankruptcy Rule 2002(a)(2). However there is an exception which statutorily authorizes a trustee or debtor in possession who is authorized to operate a business to enter into transactions in the ordinary course of business without notice or a hearing.

Similarly, a trustee or debtor in possession who is authorized to operate a business may incur unsecured debt in the ordinary course of business pursuant to § 364(a). Debt is liability on a claim, 11 U.S.C. § 101(11), and a claim includes any right to payment whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(4).

Trying to piece this all together, it becomes clear that whether we are proceeding under §§ 549(a), 363(c) or 364(a), there really is only one issue. Was entering into the indemnity agreement "in the ordinary course of business"? The defendants argue that there are genuine issues of fact as to whether or not this transaction was in the ordinary course of business. In their memorandum they argue that "Waterfront's 'business' always has been to develop or sell the Depot property." Therefore, they argue, anything including this indemnity agreement which facilitated that business would be in the ordinary course of business. However the defendants' argument fails to recognize that there are at least two dimensions to the concept of ordinary course of business. The defendants focus on one dimension which might be called the horizontal dimension. That is,

we compare this debtor's business to other businesses and based on the kind of business it is in, we decide whether a type of transaction is in the course of that debtor's business or in the course of some other business. Thus raising a crop would not be in the ordinary course of business for a widget manufacturer because that is not a widget manufacturer's ordinary business.

However there is another dimension which we could perhaps call the vertical dimension. Even though something is the type of transaction in which this debtor could be expected to take part, is it the type of transaction that is in the *ordinary* course of business? Some transactions either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary. As one district court analyzed the problem:

> the apparent purpose of requiring notice only where the use of property is extraordinary is to assure interested persons of an opportunity to be heard concerning transactions different from those that might be expected to take place so long as the debtor in possession is allowed to continue normal business operations under 11 U.S.C. § 1107(a) & § 1108. The touchstone of "ordinariness" is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing, because their objections to such transactions are likely to relate to the bankrupt's (sic) chapter 11 status, not the particular transactions themselves.

*Armstrong World Industries, Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 394 (S.D.N.Y. 1983). Utilizing the creditors' expectation test, I think it is clear that the indemnity agreement is the type of transaction which creditors would expect to have advance notice of and have a chance to object to. This sort of open-ended exposure to unlimited liability is simply not the type of transaction which creditors expect a debtor will enter into without notice to creditors and other interested parties.

This is especially true when the indemnity agreement is for the benefit of a separate business in which the principal of the debtor has an interest. This is true even if, as the defendants' claim, some residual benefit would accrue to the debtor by the success of the First Street Station. In short when we are talking about what I have termed the vertical test for ordinary course of business, the test becomes whether or not the transaction is within the day to day business of the debtor without some kind of separate authorization. In deciding whether or not something is within the ordinary course of business, one place we can look are the statutes of the state regarding certain kinds of business transactions. Minnesota has a statute which discusses this type of transaction:

> A corporation may lend money to, guarantee an obligation of, become a surety for, or otherwise financially assist a person, if the transaction, or a class of transactions to which the transaction belongs, is approved by the affirmative vote of a majority of the directors present and:
>
> (a) Is in the usual and regular course of business of the corporation;
>
> (b) Is with, or for the benefit of, a related corporation, an organization in which the corporation has a financial interest, an organization with which the corporation has a business relationship, or an organization to which the corporation has the power to make donations;
>
> (c) Is with, or for the benefit of, an officer or other employee of the corporation or a subsidiary, including an officer or employee who is a director of the corporation or a subsidiary, and may reasonably be expected, in the judgment of the board, to benefit the corporation; or
>
> (d) Has been approved by the affirmative vote of the holders of two-thirds of the outstanding shares.

Minn.Stat. § 302A.501 Subd. 1. Thus the state of Minnesota feels that this sort of transaction is so extraordinary as to require approval of the board of directors and under some circumstances, the holders of two-thirds of the stock. Any transaction which as a matter of corporate statutory law cannot be entered into without approval of the board of directors or shareholders is not a transaction in the ordinary course of business.[5]

The defendants knew that Waterfront was in bankruptcy and knew that no notice had been given to creditors nor any court approval obtained for the indemnity agreement. They are sophisticated business people and knew the transaction was questionable from the beginning. I suspect that the parties assumed the Chapter 11 case would be dismissed shortly thereafter and gambled on that fact. Unfortunately for the defendants, the case has never been dismissed.

> Alternatively, the defendants argue that there is a genuine issue of material fact regarding whether the indemnity agreement had any adverse impact on Waterfront at the time of its execution. If not, then the transaction was singularly ordinary since it posed no financial risk to Waterfront.

*Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment,* p. 5. Not surprisingly, the defendants cite no authority for this interesting argument. In the first place, guaranteeing the debt of another always has some adverse impact even if the parties do not expect to meet the guarantee. In the second place, "adverse impact" is not a test of ordinariness.

Since the defendants' claims are based in total on the indemnity agreement, they must all be disallowed.

THEREFORE, IT IS ORDERED:

5. I am not holding that such approval is required once a debtor is in bankruptcy nor in fact is it relevant in this inquiry whether or not such approval had been obtained. It would make no difference whether or not approval of this transaction had been obtained either from

1. The Indemnity and Hold Harmless Agreement dated May 18, 1983 is void as to the debtor, Waterfront Companies, Inc., its bankruptcy estate, and the trustee.

2. Claim No. 20 filed by Dan Christensen is disallowed.

3. Claim No. 21 filed by Paul A. Feldman is disallowed.

4. Claim No. 22 filed by Universal Lending Corporation is disallowed.

5. There being no just reason for delay, judgment shall be entered accordingly.

the directors or the shareholders. Once it is determined that a transaction would require approval of the directors or shareholders, then that transaction is not in the ordinary course of business and therefore may not be entered into without notice and a hearing.