In re Bruce G. JEURISSEN and Marsha M. Jeurissen, Debtors.

Bankruptcy No. 4–86–3759.

United States Bankruptcy Court, D. Minnesota.

April 19, 1988.

P. Joseph O'Neill, Chaska, Minn., for debtor.

Arthur C. Benson, Minneapolis, Minn., for Chaska Inv. Ltd. Partnership.

## MEMORANDUM ORDER

NANCY C. DREHER, Bankruptcy Judge.

This matter came on for hearing on February 1, 1988, on the application of Chaska Investment Limited Partnership, pursuant to 11 U.S.C. § 503(b)(1)(A), to determine whether certain rent claimed to be due from the debtors is an administrative expense. Arthur C. Benson appeared for movant and P. Joseph O'Neill appeared for the debtors. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). Based on all the records and files herein and on arguments of counsel, and further based on the evidence taken at the hearing, the court makes the following Memorandum Order.

## FACTS

Chaska Investment Limited Partnership ("Chaska Investment") owns approximately 2,000 cropland acres in the Chaska area which it rents to approximately 10 separate farmers. Dale Ahlquist ("Ahlquist") has been in charge of its rental operations for several years. In that capacity he has negotiated a large volume of leases with farmers in the Chaska area.

The Debtors, Bruce E. Jeurissen ("Jeurissen") and Marsha M. Jeurissen (referred to jointly as "Debtors"), have farmed approximately 1100 acres in Chaska County for many years. Included within their farming operations are approximately 400 acres of cropland which they have been renting from Chaska Investment since 1981.

On March 31, 1986, Debtors and Chaska Investment entered into the 1986 cropland lease ("the 1986 lease"). The 1986 lease included the following language:

## SECTION D—TERM

1. *Term*—The term of this Lease shall be from April 1, 1986 to November 15, 1986, at rental rates as described in Exhibit A. Tenant agrees to surrender possession of the Property peaceably at the termination of this Lease, in a plowed condition. If Tenant fails to return the Property in a plowed condition, Tenant shall pay Landlord upon demand, Ten Dollars ($10.00) for each unplowed acre of the Property as determined by the Landlord.

It also provided that rent for the 1986 crop year was due November 15, 1986, with interest accruing thereafter at the rate of 8% per annum. The lease further provided that Chaska Investment would have a security interest in the crops for 1986 and that Jeurissen would sign a UCC–1 form so as to allow Chaska Investment to perfect that security interest. However, Chaska Investment did nothing to perfect its security interest.

The Debtors defaulted in payment of the 1986 lease rental payment in the amount of

$24,472.00, which came due on November 15, 1986,[1] and, on December 15, 1986, Debtors filed a petition for relief under Chapter 12 of the Bankruptcy Code. Initially, Chaska Investment (and two other of Debtors' landlords) were omitted as creditors from the Chapter 12 petition. Rather, the Debtors' schedules were prepared on an assumption that Chaska Investment (as well as the other two lessors) could be treated as secured creditors of Jeurissen Farms, Inc. (a name under which Jeurissens had been conducting some of their farming operations) and income from the 1986 crops could be viewed as assets, not of the Debtors, but of Jeurissen Farms, Inc., so as to protect the claimed security interests of these three landlords in the 1986 crop. This apparent attempt to forestall the claim of Production Credit Association (PCA) to a security interest in the 1986 crop, was apparently objected to at the first meeting of creditors, which was held on February 10, 1987.

Thereafter, when the Debtors filed their first Chapter 12 Plan of Reorganization on March 11, 1987, they listed Chaska Investment (along with the other two landlords and PCA) as secured creditors claiming a lien on the 1986 crop proceeds and indicated an intention to pay all four such creditors upon confirmation of the Plan following sale of the 1986 crop. Debtors' First Amended Plan dated March 19, 1987, and their Second Amended Plan, dated April 27, 1987, altered the treatment of these four parties by deleting any reference to the three landlords, including Chaska Investment, as secured creditors, making clear that PCA claimed to be the sole secured party in the 1986 crop proceeds, and placing Chaska Investment and the other two lessors in a class of unsecured creditors who would be paid little or nothing pursuant to the Plan. From the beginning, the various Plans filed by the Debtors treated the 1986 lease as an expired lease and not as one which could be assumed under section 365 of the Bankruptcy Code.

On April 1, 1987, Debtors' counsel mailed a letter to Chaska Investment in which counsel notified Chaska Investment that it had been erroneously left off the original petition at the time of the filing and that by a copy of the letter to the bankruptcy court, Chaska Investment's name would be added to the matrix. The bankruptcy court file reflects that Chaska Investment was thereafter (on April 3, 1987) placed on the matrix for service[2] and affidavits of service show that it received copies of materials not only relating to the confirmation of Debtors' plan, but also papers relating to subsequent proceedings in which PCA successfully claimed to be the sole perfected secured creditor of the 1986 crop and a court order dated April 27, 1987, declaring PCA's right as a secured creditor in that crop.

Chaska Investment claims that it did not have knowledge of the bankruptcy filing until it received the April 1, 1987 letter and that, in any event, Ahlquist did not understand the implications of bankruptcy even at that point in time. Ahlquist testified that until some point in late spring Jeurissen kept assuring him that Chaska Investment would be paid the 1986 arrearages in spite of the bankruptcy. Jeurissen, however, testified that even before he filed his Chapter 12 he was in regular contact with Ahlquist on the subject; that Chaska Investment knew from the beginning of the filing; and that Chaska Investment was informed of Jeurissen's original attempt to protect its interest in the 1986 crop and of the failure of that attempt in light of the objections of PCA.

The timing is important, Chaska Investment urges, because on March 20, 1987, the parties entered into a new 1987 cropland lease ("the 1987 lease") which carried essentially the same terms as the 1986 lease but to which Chaska Investment attached an "Addendum Agreement." The Addendum Agreement was also dated March 20, 1987, and provides as follows:

> In Consideration of Landlord signing the 1987 Cropland Lease before receiving

---

1. There was also $3,000.00 in rent unpaid on the 1985 crop year.

2. The other two landlords were also placed on the matrix as of that date.

any outstanding rent from 1986, Tenant hereby agrees to pay the Landlord Eleven Thousand Four Hundred Seventy Four and 00/100 Dollars ($11,474.00) not later than March 31, 1987, which amount shall be applied to the 1986 rent, first to interest, then to the outstanding principal balance.

In the event Tenant fails to make said payment by said date, Landlord reserves the right to declare the 1987 Cropland Lease Agreement null and void and may rent the land to another party.

Ahlquist testified that the figure of $11,474.00 was selected (rather than the full amount of back due rent) because that is a figure Jeurissen said he could pay. Jeurissen testified that at the time he signed the Addendum Agreement he told Ahlquist he was not sure he was in a position to be committing to pay the 1986 arrearages at all.

Shortly thereafter, Jeurissen delivered to Ahlquist a check in the sum of $10,000.00. The check was dated April 5, 1987, and was deposited by Chaska Investment on April 7, 1987. The check was drawn on the separate "Chapter 12 Debtor-in-Possession" account which had been established in connection with the Debtors' bankruptcy. Ahlquist testified that he did not notice the debtor-in-possession language on the check. It is the position of Chaska Investment that the $10,000.00 was accepted to be applied against the overdue 1986 rent payments; Jeurissen claims that he told Ahlquist the $10,000.00 was, in fact, an advance payment from a government program and it was to be applied to the 1987 lease payments, even though Jeurissen had never made advance payments on any earlier occasion.

Debtors' Seventh Amended Plan of Reorganization was confirmed by Order dated July 29, 1987. Pursuant to Local Rules 185(c) and (f), the notice of the hearing on confirmation specifically instructed Chaska Investment that three days prior to the hearing was fixed as the last day to timely serve and file applications for award of administrative expenses under 11 U.S.C. § 503, which would be heard and determined at the confirmation hearing. Chaska Investment did not file any claim in the bankruptcy proceedings, did not make any appearance in connection with the confirmation hearing, and did not file any request at that time for payment of administrative expenses. Rather, it first brought this application in late October, 1987, for a determination on claimed administrative rent. Shortly thereafter on November 15, 1987, Debtors tendered and Chaska Investment accepted two checks in the total sum of $6,500.00 which, along with the prior $10,000.00 payment, is the precise sum due for the 1987 rent.[3]

Chaska Investment claims it is entitled to an administrative rent payment totalling approximately $27,400.00 [4] made up of two components: 1) a balance due for arrearages in the 1985 and 1986 rent in the sum of approximately $10,900.00 (1985 and 1986 rent arrearages of $27,472.00, minus the $16,500.00 paid in 1987) and 2) the 1987 rent in the sum of $16,500.00, all in addition to interest. Debtors assert that Chaska Investment is only entitled to keep the $16,500 it has already received in 1987 as administrative rent or expenses of operation; that the sums owed for arrearages on the 1985 and 1986 rent are nothing more than unsecured claims; and, that the most Chaska Investment is entitled to do is file a tardy unsecured claim in the bankruptcy proceeding.

I agree with Debtors for the reasons set forth below.

## DISCUSSION

Pursuant to 11 U.S.C. § 507(a)(1), administrative expenses allowed under 11 U.S.C. § 503(b) take first priority in distribution.

---

**3.** Two payments were tendered. One in the sum of $6,194.33 to Chaska Investment and one in the sum of $305.67 to Orrin Alt. A portion of the sum was paid to Alt because during the summer of 1987 Chaska Investment had sold a small part of the 400 acre tract to Alt.

**4.** Its original application sought approximately $33,900.00 in administrative rent, but did not take into account the $6,500.00 payment made in mid-November, 1987.

The central issue is whether the unpaid prepetition debt is now an administrative claim under 11 U.S.C. § 503. That section provides in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.
>
> > \* \* \* \* \*

11 U.S.C. § 503(b)(1)(A). Essentially an administrative expense payment is a type of priority given to those who either help preserve and administer the estate or who assist with rehabilitation of the debtor for the benefit of all creditors. *In re Armorflite Precision Inc.*, 43 B.R. 14, 16 (Bktcy. D.Me.1984), *aff'd*, 48 B.R. 994 (D.Me.1985). The general rule in determining whether a claim arises from the preservation of the bankruptcy estate under section 503(b)(1)(A) is that only post-petition expenses are entitled to administrative priority. *See, e.g., In re Fuzzy Thurston's Eau Claire Left Guard*, 33 B.R. 579, 581 (Bktcy.D.Wis.1983); *In re Hearth & Hinge, Inc.*, 28 B.R. 595, 597 (Bktcy.S.D. Ohio 1983). Generally, a claim on account of pre-petition items can only be the subject of a proof of claim as a general unsecured creditor. *In re Fisher & Fisher, Inc.*, 51 B.R. 680, 682 (Bktcy.S.D.Ohio 1985). Only those obligations of a debtor that arise post-petition are entitled to treatment as administrative expenses. *Tavormina v. Weiner (In re Alchar Hardware Co.)*, 759 F.2d 867, 868–69 (11th Cir.1985). Moreover, administrative rent claims must be for reasonable amounts and cannot be allowed over and above that. *See, e.g., In re International Storage Corp.*, 41 B.R. 808, 809 (Bktcy.E.D.Wis.1984).

Chaska Investment makes a number of arguments in which it attempts to bridge the gap between pre-petition and post-petition claims of the estate. Each of them is without merit.

■ *First,* Chaska Investment argues that in the 1987 Addendum Agreement, the Debtors assumed or reaffirmed [5] the 1986 lease under 11 U.S.C. § 365. Section 365 provides in pertinent part:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or *unexpired lease* of the debtor.
>
> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(a) and (b)(1) (emphasis added). Section 365 further provides that in the case of nonresidential real estate leases, such leases will be deemed rejected unless assumed within 60 days after the order for relief, or unless the court grants additional time. 11 U.S.C. § 365(d)(4). *See In re Re–Trac Corp.*, 59 B.R. 251, 258 (Bktcy.D.Minn.1986) (lease payments made after 60 day assumption period are not payments under lease but payments made for reasonable value of or use of leased premises). Under section 365(d)(3) the debtor in possession must perform the obligations under the lease arising from and after the order for relief under any unexpired lease of nonresidential property. Section 365 also provides that rejection of an

---

**5.** Chaska Investment also may have been contending, at one point, that Debtors reaffirmed their lease under 11 U.S.C. § 524(c). That section of the Code has absolutely no application to the case at hand.

unexpired lease gives the lessor a claim for damages for breach. *See* 11 U.S.C. § 365(g).

The problem with Chaska Investment's argument is that even if the language of the Addendum Agreement could be tortured into an assumption, by March 20, 1987, the Debtors were in no position to assume the lease and therefore section 365 does not apply. The 1986 lease expired according to its terms on November 15, 1986.[6] All that remained was the Debtors' obligation to pay under the terms of the lease.

■ Unexpired leases and executory contracts are recognized under the Bankruptcy Code, however the Code does not define those terms. *See* 11 U.S.C. § 365(a). The legislative history to section 365(a) acknowledges there is no precise definition of what contracts are executory or what leases are unexpired, but recognizes it generally includes contracts on which performance remains due to some extent *on both sides.* S.Rep. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5844 (emphasis added). Furthermore, the Eighth Circuit has provided analogous support by stating a contract is executory when:

the obligation of both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing performance of the other.

*Northwest Airlines v. Klinger (In re Knutson),* 563 F.2d 916, 919 (8th Cir.1977). I conclude that the lease expired November 15, 1986 by virtue of its terms and the only performance that remained was payment by the debtor. Therefore, the 1986 lease cannot be assumed post-petition under 11 U.S.C. § 365 and thus cannot for this reason be claimed as an administrative expense. There is no such thing as revival of an expired lease in bankruptcy.[7] *See, e.g., Kopelman v. Halvajian (In re Triangle Laboratories, Inc.),* 663 F.2d 463, 467–68 (3rd Cir.1981); *In re Mushroom Transp. Co., Inc.,* 78 B.R. 754, 760 (Bktcy.E.D.Pa. 1987); *In re DeSantis,* 66 B.R. 998, 1003 (Bktcy.E.D.Pa.1986) (uniformly recognized that where a lease has been terminated under state law prior to bankruptcy, the termination renders the lease unassumable under section 365); *Dellway Villa Apartments v. Goodloe, (In re Goodloe),* 61 B.R. 1016, 1018 n. 4 (Bktcy.M.D.Tenn.1986) (citing cases for proposition where lease terminated under state law prior to bankruptcy, termination may render lease unassumable under section 365).[8]

**6.** Whether an agreement is an unexpired lease or an executory contract is a question of state law. *In re Myklebust,* 26 B.R. 582, 583 (Bktcy. W.D.Wis.1983). *See Speck v. First Nat'l Bank of Sioux Falls (In re Speck),* 798 F.2d 279, 280 (8th Cir.1986). Under Minnesota law the rights of the parties to a contract for farming necessarily depend on the language of the particular contract. *See Gillilian v. Municipal Court,* 123 Minn. 377, 380, 143 N.W. 978, 979 (1913). A lease may be terminated by express agreement. *Trimble v. Lake Superior & Puget Sound Co.,* 99 Minn. 11, 13, 108 N.W. 867, 868 (1906); *Provident Mutual Life Ins. Co. v. Tachtronic Instruments, Inc.,* 394 N.W.2d 161, 164 (Minn.Ct.App. 1986). *See also Orr v. Bennett,* 135 Minn. 443, 447, 161 N.W. 165, 166 (1917) (under state law the lease expired pursuant to its express terms).

**7.** In another context the Code additionally makes clear the distinction between expired and unexpired leases when it provides that expired leases or those which expire during the pendency of the case do not become part of the bankruptcy estate. Section 541 provides in pertinent part:

(b) Property of the estate does not include—

\* \* \* \* \* \*

(2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case.

11 U.S.C. § 541(b)(2).

**8.** In reaching this conclusion, I note but reject Chaska's argument that the lease had not expired because Jeurissen had not yet plowed the acreage by March 20, 1987. The testimony in this regard was equivocal, at best, and I am not persuaded that Jeurissen had failed to plow in 1986. Even if he had, a failure to plow over at the end of the season did not extend the term of the lease; it merely gave the lessor the right to assess a penalty against the lessee of $10.00 for each unplowed acre.

■ Even assuming the 1986 lease had not expired prior to the debtors filing their Chapter 12 petition, the requirements of section 365(a) and (b) have been overlooked by Chaska Investment. Because the Code views such a lease as potentially of value to the estate, section 365(a) permits a debtor in possession to assume an unexpired lease subject to court approval and subject to cure of the arrearages. However, in the present case there was no court approval of an assumption by the debtors of an unexpired lease. Chaska Investment made no motion requiring the debtors to assume or reject the lease. The importance of court approval of assumption was highlighted in *Frank C. Videon, Inc. v. Marple Publishing Co. (In re Marple Publishing Co.)*, 20 B.R. 933 (Bktcy.E.D.Pa.1982). In *Marple* the court granted the landlord's motion to require the debtor to assume or reject the lease; however, no one obtained the approval of the court to assume the lease. *Marple*, 20 B.R. at 935. *Marple* suggests that without assumption pre-petition lease obligations cannot be carried over as an administrative expense. *Id.* *See Fuzzy Thurston's*, 33 B.R. at 582. *See also Mushroom Transp.*, 78 B.R. at 761 (section 365(a) permits a debtor in possession to assume an unexpired lease subject to court approval). Nor did the Debtors take any steps to assume the lease within the 60 day time period provided by 11 U.S. C. § 365(d)(4) and, even if they had done so with respect to an unexpired lease, the court would have been faced with the question of whether the rental obligations assumed in the 1987 lease were reasonable or excessively burdensome. None of this happened, however, and it is clear that section 365 does not validate the arrangement the parties privately made.

■ *Second,* Chaska Investment argues the execution of the 1987 cropland lease which incorporated a commitment to pay a portion of the pre-petition rental arrearages is enforceable because it constituted a post-petition contract entered into in the ordinary course of business. *See* 11 U.S.C. § 363(c)(1).[9] Section 363(b) requires notice and a hearing before the debtor in possession may use, sell, or lease property of the bankruptcy estate other than in the ordinary course of business. In order to be valid, a lease of property must either be in the ordinary course of business under 11 U.S.C. § 363(c), or occur after a notice and a hearing. *Burlington Northern Railroad Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 67 B.R. 360, 362 (D.Or.1986). Chaska Investment and Jeurissen entered into the post-petition lease without prior notice or a hearing; therefore, the lease is invalid unless entered into in the ordinary course of business.

Chaska Investment's argument is that the 1987 lease was made in the ordinary course of business because the parties had entered into cropland leases for a number of years. Its argument misses the point. Whether or not a transaction is in the ordinary course of business is a two step analysis. *See Johnston v. First Street Cos. (In re Waterfront Cos.)*, 56 B.R. 31, 34–35 (Bktcy.D.Minn.1985). First, we compare the debtor's business to other similar businesses and decide whether a type of transaction is in the course of that debtor's business. Second, even though a transaction is the type in which the debtor could be expected to take part, we decide whether it is the type of transaction that is in the ordinary course of business. *Waterfront*, 56 B.R. at 35. Transactions that either by their size, nature or both are not within the day to day operations of a business are considered extraordinary. *Id.* Arguably it is ordinary for a farmer to enter into crop leases on an annual basis, especially since the parties in this case have done this previously. Also it would appear that a creditor would reasonably expect a farmer to

---

**9.** Section 363 provides in pertinent part:

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203 or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

* * * * * *

11 U.S.C. § 363(c)(1).

enter into cropland leases, given the farmer's prior dealings. Chaska Investment's argument fails, however, with respect to the Addendum Agreement. In the context of the dealings between these parties and the pendency of the bankruptcy case, it was extraordinary to make an arrangement which committed payment of earlier arrearages (or partial payment of such arrearages) before beginning a new lease year. Indeed, the 1986 lease was itself entered into while sums remained due under the 1985 lease without any commitment of the Debtors to make up those arrearages. This type of commitment does not meet the test of ordinary course. *See Bankers Trust Co. v. Seidle (In re Airlift International, Inc.)*, 70 B.R. 935, 941 (Bktcy.S.D.Fla.1987) (amendment to security agreement, disguised as a lease, which substantially increases debtor's obligations is not in the ordinary course of business); *Clark v. First State Bank (In re White Beauty View, Inc.)*, 70 B.R. 90, 92–93 (Bktcy.M.D. Pa.1987) (post-petition bankruptcy transfers made in order to satisfy pre-petition debts are out of the ordinary course of business and subject to being avoided); *Dant & Russell*, 67 B.R. at 363 (post-petition lease not in ordinary course of business where not an everyday transaction even though merely extended pre-petition obligations). *See also Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 111–112 (6th Cir.1987) (post-petition contract entered into without court approval which compensates for pre-petition debt impermissibly converts unsecured pre-petition claims into post-petition priority status). The Sixth Circuit in *White Motor* went on to state that "section 363(c)(1) applies on its face only to post-petition transactions and does not speak to contracts which attempt to change pre-petition obligations into post-petition obligations." 831 F.2d at 112. Furthermore the court held that the debtor-in-possession was not empowered to alter the creditor's nonpriority status on pre-petition claims, even if the post-petition contract was in the ordinary course of business. *Id.*

**10.** Chaska Investment has not explained why the commitment to make up the arrearages to the extent of $11,474.00 would *ipso facto* have

■ *Third* and finally, Chaska Investment argues that it was misled and that the Debtors should be estopped to argue that the Addendum Agreement cannot be enforced.[10] It cites no authority for this argument in bankruptcy law, and I reject the argument as unfounded on the facts as I find them. I am convinced that Chaska Investment knew full well of Jeurissen's bankruptcy proceedings and engaged, along with Jeurissen, first in an attempt to protect Chaska Investment's unperfected security interest in the 1986 crop proceeds and, when that failed, in entering an Addendum Agreement both parties suspected might not be enforceable. Their suspicions were correct; it is not.

### ORDER

Based on the foregoing, IT IS HEREBY ORDERED THAT:

The application of Chaska Investment Limited Partnership for a determination that it is entitled to an administrative expense for rent which remains unpaid is denied.

encompassed a commitment to make up all arrearages.