tor has nothing more than a security interest in the rents.

In sum, as discussed above, applying the rents to the debt might result in the loss of a creditor's right to a deficiency judgment but not the loss of its security. The Debtor's third argument must also fail. The Court views *Bayside Developers* as an aberration which would not be followed by other California courts. There is no other authority of which this Court is aware for the proposition that real property security must be exhausted before personal property security is touched upon penalty of a loss of a creditor's security interest.

### CONCLUSION

Aetna's motion to dismiss is granted without prejudice. The Debtor has failed to state a claim upon which the relief requested—a declaration that Aetna has waived its security interest—may be granted. The Debtor may wish to amend the complaint to state a claim for damages. To properly state such a claim, the Debtor must allege that Aetna breached its contractual obligation to use any rents collected to pay the operating expenses and/or to apply any rents collected to the Debt. Alternatively or additionally, the Debtor may wish to seek a declaration that Aetna waived its right to obtain a deficiency judgment. To properly state such a claim, the Debtor must allege that Aetna applied the rents collected to the Debt. The Debtor will have 20 days from the date of entry of the order denying the motion to dismiss to file the amended complaint. Aetna is directed to submit a proposed form of order in accordance with the local rules of this Court.

In re **FOUNDATION GROUP SYSTEMS, INC.,** Debtor.

**Bankruptcy No. 91–22485–B–11. Motion. No. EDP–1.**

United States Bankruptcy Court, E.D. California.

May 29, 1992.

Elliott D. Pearl, Sacramento, Cal., for applicant Greg C. Sconce.

Linda A. Selig, Selig & Oelsner, Sacramento, Cal., for debtor in possession.

Estela O. Pino, Greve, Clifford, Diepenbrock & Paras, Sacramento, Cal., for committee of unsecured creditors.

## MEMORANDUM DECISION AUTHORIZING PAYMENT OF ADMINISTRATIVE EXPENSE

DAVID E. RUSSELL, Bankruptcy Judge.

Greg Sconce has applied for payment of an administrative expense in the sum of $17,500.00. Both the debtor in possession and the committee of unsecured creditors have filed opposition to the application. Following argument before this court on February 25, 1992, the matter was submitted for decision. The court has carefully considered the argument of counsel, and the record of this case, and will grant the application as set forth below.

The debtor filed a chapter 11 petition on April 3, 1991. No trustee has been appointed, and the debtor functions as the debtor in possession.

The facts appear undisputed. Per a letter dated May 14, 1991 and signed by the debtor's chairman of the board, George Deubel, the debtor in possession agreed to pay a 10% finder's fee to Mr. Sconce if he successfully introduced a funding source to the debtor. In relevant part, the letter provided:

> You have identified several funding sources regarding a potential cash infusion into Foundation Systems, Inc. Subject to the approval of the Chapter XI Trustees, we agree that a ten percent (10%) Finder's Fee will come to Greg Sconce if you are successful in bringing acceptable cash and an acceptable agreement between FSI [debtor] and a third party.... Third parties introduced to F.S.I.: Wellmark, O.U.C.H., Horizon.

Wellmark ultimately purchased virtually all of the debtor's assets, which resulted in the cash infusion referenced in the letter. Per an order dated August 28, 1991, this court authorized the debtor to accept Wellmark's offer, for a cash price of $175,000. There does not appear to be any dispute that Mr. Sconce was the person responsible for introducing the debtor and Wellmark.

The debtor in possession argues that no award should be made to Mr. Sconce be-

cause his employment was not approved by this court, and because he failed properly to serve notice of this motion.[1] The creditors' committee objects on that basis as well, and on the basis that Mr. Sconce has failed to establish that the fair and reasonable value of his services to the estate is $17,500. Although the theories underlying the objection common to the debtor in possession and the creditors' committee were not articulated by either, they appear to be one or both of the following: either that Mr. Sconce is a professional whose compensation depends upon prior employment by court order, pursuant to 11 U.S.C. § 327,[2] or that the finder's fee agreement is an avoidable transaction under § 549(a).

█ The requirement that an individual's employment be approved by the court in order to be eligible to compensation from the estate under § 330 is limited to employment of *professionals* pursuant to § 327(a): that subsection's nonexhaustive list of those governed by that section includes attorneys, accountants, appraisers, auctioneers, "or other professional persons". Two common characteristics of each person on this list are that each works under a license or other governmental regulation, and that each has contractually obligated himself to provide a service to the debtor in possession upon specified terms. Mr. Sconce argues that he acted as a "finder". Neither the debtor in possession or the creditors' committee disputes that characterization. A finder does not share the characteristics outlined above. By definition, a finder is

> [A] person whose employment is limited to bringing the parties together so that they may negotiate their own contract, and the distinction between finder and broker frequently turns on whether the intermediary has been invested with authority or duties beyond merely bringing the parties together, usually the authority to participate in negotiations.

*Tyrone v. Kelley*, 9 Cal.3d 1, 106 Cal.Rptr. 761, 507 P.2d 65 (1973) (finder's fee award affirmed). A person acting as a finder, and not as a broker, is not required to be licensed. *Id.* at 7, 106 Cal.Rptr. 761, 507 P.2d 65. In fact, with respect to real property, the limited activities of a "finder" are excepted from the requirement of a broker's license. Calif.Bus. & Prof.Code § 10131 (West 1991). Moreover, a common-law finder is in business for himself and owes no obligation to any principal; he remains free to accept by performance an acquirer's offer or to reject the offer by nonperformance and to deal with another. *Zalk v. General Exploration Co.*, 105 Cal. App.3d 786, 164 Cal.Rptr. 647 (1980) (finder's fee award affirmed). By the terms of the finder's fee agreement, Mr. Sconce was not obligated to provide services to the debtor in possession, nor did he owe any duty to the debtor in possession. These factors distinguish him, as a finder, from a "professional", and the court therefore concludes that Mr. Sconce was not a "professional" whose employment required court approval. Moreover, the requirement that the court approve Mr. Sconce's employment arises where fees are sought pursuant to § 330, which governs compensation to *professionals*. Mr. Sconce does not base his claim for fees on that section of the Bankruptcy Code.

█ Mr. Sconce's request for payment arises in the form of an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A), which authorizes such a claim for "the actual, necessary costs and expenses of preserving the estate". *In re Dant & Russell*, 853 F.2d 700 (9th Cir.1988) informs and dictates this court's ruling on that issue. In *Dant & Russell*, the debtor in possession, operator of a wood treatment plant and storage facilities, had entered into a postpetition lease agreement with Burlington Northern, its longtime landlord, without notice to creditors or court approv-

---

**1.** Subsequent to the debtor in possession's procedural objection, Mr. Sconce filed a proof of service attached to the "Notice of Continued Motion" filed January 31, 1992, which indicates that the debtor in possession, its attorney, all creditors, and the U.S. Trustee were served with notice of this motion on January 30, 1992. It therefore appears that the procedural objection has been met.

**2.** All subsequent references are to the Bankruptcy Code, 11 U.S.C., unless otherwise noted.

al. When the debtor in possession vacated the premises prior to the expiration of the new lease term, Burlington Northern requested an administrative expense status for its environmental cleanup costs and requested the bankruptcy court to estimate the debtor's liability under § 502(c). The bankruptcy court denied Burlington Northern's request, and further held that the postpetition lease agreements were avoidable under § 549(a) because they were not in the ordinary course of the debtor's business and were without notice and a hearing. On appeal, the district court held that the debtor in possession was liable for the reasonable rental value of the premises during its actual occupancy, and concluded additionally that the claim would be allowed as a general unsecured claim. Burlington Northern then appealed to the Ninth Circuit, which ultimately reversed and remanded the district court's decision.

The Ninth Circuit's initial inquiry was into the nature of the debtor in possession's postpetition lease agreement with Burlington Northern, since the debtor in possession argued that the agreements were avoidable under § 549(a) because they were not executed in the debtor's ordinary course of business. In analyzing that issue, the court adopted the "horizontal dimension test" and the "vertical dimension test" first enunciated in *In re Waterfront Companies*, 56 B.R. 31, 34–35 (Bankr., D.Minn.1985) and in *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y.1983), respectively. The "horizontal dimension" test focuses on whether other businesses similar to the debtor's would engage in the conduct in question as a normal part of their business operations. The "vertical dimension" test questions whether a hypothetical creditor would expect the debtor to engage in the particular course of conduct. In the *Dant & Russell* case, the Ninth Circuit concluded that since the debtor had occupied its wood treatment facility for years, renewal of its business lease was within the "ordinary" course of its business even though a renewal occurred only occasionally. Thus, the court determined that the "horizontal" test had been satisfied. Turning to the "vertical dimension", or

"creditor's expectation" test, the court focussed on whether the transaction would subject a creditor to economic risks of a nature different from those he accepted when he decided to extend credit. The court noted the discussion in *Phillips, supra* at 394,

> "[t]he touchstone of "ordinariness" is ... the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing, because their objections to such transactions are likely to relate to the bankruptcy's Chapter 11 status, not the particular transactions themselves."

*In re Dant & Russell, supra*, 853 F.2d at 705. In the *Dant & Russell* case, the issue was whether a hypothetical creditor would have expected the debtor to renew its business premises lease, and the Ninth Circuit reasoned that such a creditor would presume the existence of an ongoing lease, with renewals as necessary. Consequently, the court concluded that the "vertical dimension" test had additionally been satisfied. That being the case, the debtor in possession's renewal of its business lease was determined to be in the ordinary course of its business and the lease was not avoidable under § 549(a).

Moreover, the Ninth Circuit announced that an administrative expense allowable under § 503(b)(1)(A) is to be determined on an objective standard that measures the fair and reasonable value of the goods or services rendered. *In re Dant & Russell, supra*, 853 F.2d at 707. However, the presumption is that the amount reserved under the agreement constitutes a fair and reasonable value. As the bankruptcy court had not determined the fair and reasonable value of the lease, the Ninth Circuit remanded for that determination.

This court's attention is directed then to applying these tests to the case at bar. With respect to the "horizontal dimension" test, the court notes that a business similar to that of the debtor's, i.e., computer ser-

vices and counseling,[3] could be expected to enter into a finder's fee agreement if it was attempting to locate a source of cash infusion for its business. The concept of payment to an individual who is instrumental in obtaining financing or bringing parties to a sale together is understood well beyond the scope of computer services and counseling. Consequently, the court is satisfied that the "horizontal dimension" test has been satisfied.

The second inquiry, the "vertical dimension" test, yields the same conclusion. A hypothetical creditor dealing with this debtor would reasonably expect that the debtor might agree to pay an individual whose efforts yield an economic benefit to the debtor. In fact, the creditor's position may be enhanced by such an agreement because, at least from a theoretical viewpoint, such an agreement will result in the greatest number of potential purchasers being introduced to the seller, which would maximize the price the debtor is able to obtain for its property. In this case, the debtor in possession was able to sell the bulk of its assets to Wellmark for $175,000. No creditor or interested party voiced any concern over the adequacy of the price. The court was convinced at the time it approved the sale, and remains convinced, that the sale to Wellmark was for the best price possible under the circumstances. Therefore, the court concludes that the "vertical dimension" test has likewise been satisfied. Because both the horizontal and vertical dimension tests have been met, the finder's fee agreement was executed in the ordinary course of the debtor-in-possession's business. The agreement cannot be avoided under § 549(a).

■ The final inquiry is into the reasonable value of the services rendered to this bankruptcy estate by Mr. Sconce. His declaration details his meetings with the debtor's principals, his introduction of Wellmark to the debtor in possession, and the fact that he did not participate in any negotiations for the sale of the debtor's medical billing system to Wellmark. His activities fall squarely within the definition of a "finder", and the court is satisfied that, outside of bankruptcy, Mr. Sconce would be entitled to the 10% finder's fee without additional evidence.

■ However, the court is charged with determining the reasonable value of the services rendered, and is not bound by the terms of the finder's fee agreement. *In re Dant & Russell, supra,* 853 F.2d at 707, instructs that the contractually agreed upon compensation is presumed to be a fair and reasonable value, but that the presumption may be rebutted. Therefore, the starting point is a presumption that Mr. Sconce is entitled to the 10% finder's fee of $17,500. The creditors' committee, which raised the issue of the reasonable value of Mr. Sconce's services, has not adduced any evidence to suggest that $17,500 is *not* a reasonable value. There is no question that the sale of the debtor's assets to Wellmark benefitted this estate. There has been no evidence adduced to suggest that the sale would have been possible but for Mr. Sconce's efforts. In light of the information set forth in Mr. Sconce's declaration, i.e., his meetings and discussions with the debtor in possession, and his prior employment and knowledge of businesses whose needs might be compatible with those of the debtor's, the court cannot say that Mr. Sconce has failed to meet his burden of establishing that the 10% finder's fee is a fair and reasonable compensation. Consequently, the application will be granted.

An appropriate order will issue.

---

**3.** Statement of Financial Affairs for Debtor Engaged in Business, question 1(b).