## In re GLOSSER BROS., INC., Debtor.

**Bankruptcy No. 89–0752.**
**Motion No. 89–3138M.**
**Adv. No. 89–0186.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 24, 1989.

See also, Bkrtcy., 102 B.R. 38.

William H. Schorling, Klett, Lieber, Rooney & Schorling, Pittsburgh, Pa., for Creditors' Committee.

Stephen I. Goldring, Pittsburgh, Pa., Asst. U.S. Trustee.

Philip E. Beard, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for debtor.

William L. Glosser, Smorto, Persio, Zadzilko, Sibert & Webb, Johnstown, Pa., for movant/Conrad Wholesale, Inc.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a request for a Mandatory Injunction by Conrad Wholesale, Inc. ("Conrad"), a creditor in this case.[1] Conrad seeks to have this Court order the Debtor to keep its Johnstown department store location open and operating while an investment group is created to purchase same. A hearing was granted and held eight (8) days after the injunction was filed. Testimony was offered and the parties argued their respective positions.

The issue we now decide is of great moment to the Johnstown community. Federal and state governmental leaders have expressed concern and prevailed upon us to do what we can to assist their constituency. We feel great deference to honor their request; however, the law in this matter does not so allow, and it is with profound reluctance that we reach our present decision. Based upon the testimony received and the law on the issue, we find that Conrad has not met the substantial burden required to obtain a mandatory injunction.

### FACTS

Debtor is a corporation which operates numerous retail and discount outlets. The particular store in question, Glosser Bros. Store, is located in downtown Johnstown. This was originally the flagship location, but in recent years has been responsible for only five percent (5%) of Debtor's total revenues.

During the years just prior to the bankruptcy filing Debtor expended in excess of $2,000,000.00 in an effort to revitalize the Johnstown store. During this same time period, some of the Debtor's seventy-five (75) other stores were also demonstrating a lack of profitability, with little indication of a reversal in the future trend. Just prior to the bankruptcy filing, Debtor determined that several of the unprofitable retail and discount outlets would be closed in order to concentrate efforts on those outlets which still appeared viable.

This was not the first time that Debtor had closed outlets, nor was it expected to be the last. Debtor's President testified that the opening of new outlets and the closing of those which do not meet expectations is a part of business for a retailer

---

[1] Conrad initally filed this action as a motion; however, proper practice requires that an injunction be filed as an Adversary Complaint. We have so denominated same. Any further action relating to this issue should be filed at the above-captioned Adversary Number.

and/or discounter of Debtor's size. He also testified that over the course of the last twelve (12) years, Debtor has closed fifteen (15) facilities. An additional eleven (11) stores are either slated for closure during 1989 or have already been closed this year. This witness further advised that business decisions regarding store closings throughout the industry are made on the basis of profitability and future potential. No rebuttal testimony was offered.

The Debtor's bankruptcy filing occurred on March 24, 1989. The very next day Debtor announced the closing of the Johnstown store. Six (6) weeks passed before Conrad filed this emergency action. In substance, Conrad seeks to stop the Debtor from allowing the Johnstown store lease to be rejected by operation of law, and in fact is trying to force Debtor to maintain the status quo—keep the store open and operating—through September of this year. Conrad, without substantiation, asserts that business will be strong this summer, anticipating substantial tourist interest as a result of the centennial observance of "The Johnstown Flood". Conrad further avers that during said time frame a group of investors *may* be put together to purchase the store and continue its operation without interruption of the business.

Debtor's President testified that to remain open through September would cost the estate an additional $600,000.00 in losses. Specifically, the inventory has been thoroughly depleted, and it would be several months before the stock could be replenished. He also testified that he was having some difficulty obtaining inventory for his highly productive stores, and felt it would be almost impossible to properly restock these shelves. The testimony further showed that Debtor has tried, albeit unsuccessfully, to sell the business at the Johnstown location to other prospective operators. The management has gone so far as to offer to sell the business, including the fixtures, for the consideration of $1.00. No one has accepted this offer.

Conrad's legal argument avers that the closing of the store is an action outside the ordinary course of Debtor's business, and should not be permitted without prior notice and hearing. Debtor's counsel has argued that the decision to close was made prepetition and that the opening and closing of locations is very much in the ordinary course of this Debtor's business, and in fact, is in the ordinary course of business for the industry as a whole.

## ANALYSIS

The moving party on a request for a preliminary injunction must generally show: (1) a reasonable probability of ultimate success on the merits of the litigation; and (2) that the movant will be irreparably harmed if relief is not granted. Additionally, the Court must take into account (3) the possibility of harm to other interested parties from the grant or denial of the injunction and (4) the public interest. When the request is directed at providing mandatory relief, the burden on the movant is particularly heavy. *Punnett v. Carter*, 621 F.2d 578 (3rd Cir.1980); *United States v. Spectro Foods Corp.*, 544 F.2d 1175 (3rd Cir. 1976). This heavy burden has not been met. To the contrary, Debtor has offered substantial proof in opposition to the requested relief.

### I. *Probability Of Success On The Merits*

Under Chapter 11 of the Bankruptcy Code, a debtor in possession generally has the rights and duties of a trustee. 11 U.S.C. § 1107(a). Under § 1108, the debtor in possession is authorized to operate its business. One of the rights which can be exercised by the debtor in possession is the authority to use, sell, or lease estate property. 11 U.S.C. § 363. The requirement therein, imposing due process considerations, depends upon the classification of the particular transaction:

§ 363 **Use, sale, or lease of property**

·    ·    ·    ·    ·

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

·    ·    ·    ·    ·

(c)(1) If the business of the debtor is authorized to be operated under section ... 1108, ... of this title, and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or hearing.

The key issue in this injunction matter is whether the closing of the Johnstown store is in the ordinary course of this Debtor's business. There are no cases directly on point to this issue. Therefore we analyze the concept of "ordinary course of business" and apply our present facts to the law. The term "ordinary course of business" can be examined from two standpoints: they have been denominated the "vertical" test and the "horizontal" test. *In re Hanson Industries, Inc.*, 90 B.R. 405 (Bankr.D.Minn.1988); *In re Waterfront Companies, Inc.*, 56 B.R. 31 (Bankr.D. Minn.1985).

The vertical test considers the Debtor's activity from the perspective of a creditor. The pivotal question becomes "Did I expect and accept the economic risks inherent in this transaction when I decided to become a creditor?" The test focuses on the comparison of Debtor's prepetition and postpetition activities, to determine if any significant change has occurred.

Debtor's President testified and provided documentation indicating that merchandise outlets are opened and/or closed by the Debtor on a periodic basis, depending upon their profit histories and future expectations. During the course of the last twelve (12) years Debtor has opened and closed numerous stores; it has even closed and sold an entire division. While we acknowledge that the number of store closings has increased during the last three (3) years, we also note that as of the bankruptcy filing Debtor listed seventy-one (71) active outlets on its Schedules. The closings now anticipated do not constitute a substantial portion of Debtor's revenues, nor does this activity appear significantly different from that conducted prepetition.

Additionally, what is ordinary for a large company may not be ordinary for a small business. Closing one (1) or even ten (10) of the seventy-one (71) stores is a far cry from closing one (1) of two (2).

Finally, we note that Conrad's request speaks only to the Johnstown store, and not to any of the other stores scheduled for closure. Whether this singular treatment is the result of a deep-seated community spirit or a claim that this particular store is somehow inherently different from the others, we do not know. For the record, however, we make it clear that the Johnstown store is not so different from the other retail outlets as to make its closure an extraordinary event.

The second test, known as the "horizontal" test or "industry wide" test, compares Debtor's transactions to those of similar businesses and determines if the activity at issue is in the course of that particular type of business. *In re Hanson Industries, Inc., supra.* The only testimony provided was that of Debtor's President, who stated that operators in the retail industry constantly monitor their facilities, using the same two criteria—profitability and future trends—as are used by Debtor. He also testified that the opening and closing of outlets based upon said criteria is an industry wide practice. Although we have no supporting documentation provided, neither do we have any attempt to offer rebuttal testimony.

It appears to this Court that by employing either the vertical or horizontal test, we must find that Debtor's actions constitute activities in the ordinary course of business. Therefore, there appears to be little, if any, likelihood that Conrad's argument can succeed on the merits.

## II. *Irreparable Harm To Movant*

We have been provided absolutely no testimony to show how Conrad will be irreparably harmed without this mandatory injunction. To the contrary, Conrad, as a creditor, should be concerned first and foremost with the reorganization of Debtor, in order to be repaid, and perhaps to reinstate normal business relations. If Debtor is forced to operate this store at a

projected $600,000.00 loss, the success of a reorganization will be jeopardized. If the Debtor is forced to liquidate, Conrad may receive nothing. Movant will suffer greater harm if the injunction is granted than he will if it is denied.

### III. *Possible Harm To Other Interested Parties*

The most notable party to be harmed by this injunction would be the Debtor, as it stands to lose $600,000.00 if the Johnstown location remains in operation through September. The Court offered to institute the stay requested if Conrad would post an equivalent bond. We are advised that Conrad is not in a position to do so. Yet, if Debtor remains in operation through September, and Conrad's vision of an "investment group" purchaser evaporates, the estate will be $600,000.00 smaller. This loss of capital will affect Debtor's reorganization. If a business plan is still possible, the pro rata distribution to unsecured creditors will be substantially diminished. If the loss is so substantial that a business plan is not feasible, the unsecured creditors are likely to receive nothing. Frankly, it just does not appear that anyone will be helped by this injunction.

### IV. *Public Interest*

As we stated at the outset, we are genuinely moved by the outpouring of community spirit displayed upon announcement that the Glosser Bros. Store was closing. The store has been in existence for many years and has become somewhat of a landmark. The imminent closing has provided a cause for the citizens of Johnstown to champion, and offers them an opportunity to voice civic pride and support. They continue to view the store as it once was, strong and vibrant. The store is now a shadow of its former self. The expenses of operation continuously exceed the revenues, and it is self-destructing. We understand the anger and grief being felt by the citizens of Johnstown—almost like a trust betrayed. But Johnstown needs to rally around the Debtor, one of the few large corporations with roots and headquarters in a smaller municipality, and be proud of its attempt to reorganize.

Movant has not met its burden and its request will be denied.

An appropriate Order will be issued.