**In re Byron Douglas PETERSEN, Jr., a/k/a B. Douglas Petersen, Jr., individually and as a former officer, director and shareholder of Laurelwood, Ltd., Debtor.**

**Bankruptcy No. 86–B–08155–M.**

United States Bankruptcy Court, D. Colorado.

Feb. 20, 1990.

Stephen E. Howard, Fischer, Howard & Francis, Fort Collins, Colo., for plaintiff.

William J. Kneeland, Fort Collins, Colo., for debtor.

MEMORANDUM OPINION
AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER is before the Court on the Motion to Show Cause Why Creditor Should Not be Held in Contempt filed by the Debtor on September 19, 1989 and the Reply filed by the creditor, Stephen Slezak, on December 11, 1989. The Court held a hearing regarding this matter on January

9, 1990. At the conclusion of that hearing, this Court issued its Order from the bench. Because of the difficulty, yet importance of this issue, the oral ruling from the bench is supplemented with the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. The Debtor in this case is Byron Douglas Peterson, Jr. ("Debtor" or "Peterson" herein). The creditor in this case is Stephen Slezak ("Creditor" or "Slezak" herein).

2. Debtor was an active and experienced businessman primarily engaged in investments and securities.

3. On May 27, 1986, Peterson executed a lease with Slezak for a commercial building known as 205 South Meldrum, Fort Collins, Colorado ("Lease" herein). The term of the Lease was from June 1, 1986 through June 1, 1991, with basic monthly rental payments of $1,900.00.

4. About three months after executing the Lease, on September 2, 1986, Peterson filed for protection pursuant to Chapter 7 of the Bankruptcy Code. In his Schedules, Peterson properly listed Slezak as an unsecured creditor due to a "1986 business Lease."

5. Debtor did not disclose any right or interest in a Lease as an asset on his Schedules. Further, Debtor affirmatively declared there were *no assets* or debts from his business activities.[1]

6. On December 31, 1986, the Chapter 7 Interim Trustee issued a No–Asset Report.

7. Peterson was granted a discharge on February 23, 1987.

8. About one month later, on April 1, 1987, Peterson, the tenant, and Slezak, the landlord, executed a document entitled "Addendum to Lease Agreement By and Between Stephen Slezak and Doug Peterson 27 May 1986" ("Lease Addendum" herein). The Lease Addendum reinstates and reaffirms the Lease.[2] Peterson was current in his rent payments at the time this Lease Addendum was executed.

9. Peterson continued to make the monthly rent payments and occupied the premises through February, 1989.

10. On March 13, 1989, Peterson wrote to Slezak in which he stated "we are no longer able to make the lease payments to you." Until that time, Peterson had been essentially current in his Lease payments throughout the term.

11. On June 19, 1989, Slezak filed suit against Peterson in the District Court of Larimer County, Colorado, for rent, pursuant to the Lease and Lease Addendum. Pursuant to Rule 109.1, C.R.Civ.P., this matter was set for hearing before an arbitrator on September 20, 1989.

12. On September 19, 1989, Peterson filed the Motion to Show Cause Why Creditor Should Not be Held in Contempt ("Motion" herein) in this Bankruptcy Court.

13. On October 26, 1989, in response to an Order of the Court, Peterson filed a memorandum brief with the Court regarding this matter. Slezak filed a brief with this Court on December 11, 1989 and a

---

1. Debtor stated in his Statement of Financial Affairs for Debtor Engaged in Business, as follows: "Although Debtor has been engaged in several business enterprises during the past 6 years, no debt exists or remains as a result of said business enterprises and no ownership interest remains or asset held as a result thereof." *See,* Statement of Financial Affairs for Debtor Engaged in Business, question no. 1.d. The lack of disclosure and inconsistencies in disclosure in the Debtor's Schedules and Statements of Affairs remain unexplained. For example, Debtor not only failed to disclose the Lease as an asset, he failed evidently to disclose the monthly lease rental payments in his budget.

2. The Lease Addendum recites, in pertinent part, as follows: "THIS Addendum forms a part of and is to be construed in conjunction with the above referenced lease. In the event of a conflict between the terms and provisions of the printed portion of said lease and this Addendum, the terms and provisions of this Addendum shall control. ... WHEREBY Douglas Petersen has entered into a lease agreement with Stephen Slezak, which agreement is attached herewith; ... NOW therefore, let it be resolved that this Addendum agreement shall serve as notice to reinstate and reaffirm the aforementioned lease agreement." Lease Addendum dated April 1, 1987.

hearing was held before this Court on January 9, 1990.

14. The within case was never previously closed by the Clerk of the Bankruptcy Court and, therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

## CONCLUSIONS OF LAW

Debtor, the tenant, claims that his former landlord and now Creditor, Slezak, should be held in contempt of Court for the Creditor's post-bankruptcy attempts to enforce, or sue for breach of, the Lease and to collect damages pursuant to the Lease and the Lease Addendum. The Debtor reasons that the Lease Addendum constituted a reaffirmation of a debt pursuant to 11 U.S.C. § 524(c) and, because the reaffirmation agreement was not executed and concluded in accordance with the Bankruptcy Code and Bankruptcy Rules, it is improper, not binding and unenforceable against the Debtor. *See*, 11 U.S.C. § 524(c) and (d);[3] B.R. 4008; and Rule 38, Local Rules of Bankruptcy. Debtor concludes that the Creditor, in trying to enforce a debt discharged in bankruptcy or otherwise attempting to enforce a defective reaffirmation agreement, is engaging in conduct which violates the Bankruptcy Code and is

contemptuous of the Bankruptcy Court. 11 U.S.C. § 524(a).

The Creditor, landlord, denies any willful and knowing conduct which might constitute contempt of Court and denies he is attempting to collect on a debt discharged in bankruptcy, or otherwise attempting to enforce a defective reaffirmation agreement. The Creditor maintains that the agreement signed for leasing the premises, the Lease Addendum, is not a reaffirmation of debt agreement as contemplated and provided for in the Code. The Lease Addendum is, rather, a post-bankruptcy agreement, a renewal and adoption of a long-term Lease agreement.

■ The central issue before the Court and one of first impression can be stated as follows: Does post-petition execution of an existing lease, or lease addendum, and performance thereunder, by a Chapter 7 debtor constitute a reaffirmation of a debt under the Bankruptcy Code or, alternatively, does it constitute a new, post-petition obligation binding on and enforceable against a Chapter 7 debtor?

### I. *Unexpired Lease Deemed Rejected.*[4]

Bankruptcy Code Section 365, executory contracts and unexpired leases, states "(a)

---

3. "(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to an extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge ...;

(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded ...;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of attorney ...

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose an undue hardship on the debtor or a dependent of the debtor;

(4) the debtor has not rescinded such agreement ...;

(5) the provisions of subsection (d) of this section have been complied with; and

(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this

subsection, the court approves such agreement....

(d) ... If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall—

(1) inform the debtor— ...

(B) of the legal effect and consequences of— ...

(i) an agreement ...

(2) determine whether the agreement that the debtor desires to make complies with the requirements ... ."

4. The issue of whether or not the Lease was an asset of the bankruptcy estate is not unimportant. Because it was not identified as an asset of the Debtor it might, arguably, not be deemed an asset of the estate. That is unlikely, however. Although the record on this is not clear or complete, since the Lease was signed by the Debtor, individually, and not through one or more of his corporations, it will be treated, for purposes of this Opinion, as an asset of the Debtor's estate. 11 U.S.C. § 541.

... the trustee subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." In this case, the Trustee, as distinguished from the Debtor, took no action in regard to the unexpired Lease between Peterson and Slezak.[5]  Section 365(d)(1) states in pertinent part:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an ... unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief ... then such contract or lease is deemed rejected.

11 U.S.C. § 365(d)(1).

Moreover, Section 365(d)(4) provides, in part:

> Notwithstanding paragraphs (1) and (2) ... if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief ... then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property ... .

11 U.S.C. § 365(d)(4).

It is reasonable and accurate to conclude in the within bankruptcy case that the Lease between the parties was deemed rejected, by operation of law, of no force and effect, and not enforceable against the bankruptcy estate except as otherwise specifically provided for in the Bankruptcy Code.   11 U.S.C. § 365(g);  *See, In re Coal–X Ltd., "76",* 103 B.R. 276 (C.D.Utah 1986), *aff'd* (in pertinent part), *rev'd* in part, 881 F.2d 865 (10th Cir.1989); *Int'l Brotherhood of Teamsters v. IML Freight, Inc.,* 789 F.2d 1460 (10th Cir.1986); *In re Bassett,* 74 B.R. 361 (Bankr.D.Colo.1987).

II. *Post–Petition Execution of Unexpired Lease by Debtor, Not Assumed by the Trustee, is Not Reaffirmation of Existing Debt Pursuant to Section 524(c).   It is New Post–Petition Debt of the Debtor.*

Debtor argues that he did not enter into an effective reaffirmation of the Lease pursuant to the procedural and substantive requirements of the reaffirmation section of the Bankruptcy Code, 11 U.S.C. § 524(c) and (d) and he is, therefore, not liable under the Lease Addendum.  The Debtor argues, in effect, that since the landlord's claim for the pre-petition Lease was discharged in bankruptcy and he, the Debtor, did not properly enter into a valid reaffirmation agreement with the landlord, there is no effective reaffirmation of that debt, and there is no obligation enforceable by the landlord.[6]

This Court is persuaded that neither the Bankruptcy Code nor the purpose and intent of the Code provisions, support the proposition that the Lease Addendum signed by the Debtor is subject to Section 524(c) and, thus, now unenforceable because it was not executed pursuant to the procedures in and requirements of Section 524(c) and (d).

Reaffirmation agreements between a debtor and a creditor are strictly construed and the letter of the law must be closely followed in order for a reaffirmation agreement to be effective.  *In re Churchill,* 89 B.R. 878 (Bankr.D.Colo. 1988).  The purpose of such strict construction of reaffirmation agreements is to protect a debtor.  "The court is properly informed of such [reaffirmation] agreements so that it may exercise equitable powers to protect the debtor from overreaching credi-

---

**5.**  Due to lack of disclosure of the Lease in the Debtor's Schedules, evidently, the Trustee had little or no knowledge of the Lease and, consequently, perhaps no opportunity to assume the Lease if she had chosen to do so pursuant to 11 U.S.C. § 365.

**6.**  In this case, the provisions of Section 524(c) were not satisfied because (a) the Lease Addendum agreement was not made before the granting of the discharge, (b) there was no clear and

conspicuous statement in the agreement advising the Debtor that the agreement could be rescinded, (c) the Lease Addendum was not filed with the Court, and (d) the Debtor did not appear at a reaffirmation hearing in accordance with Section 524(d).  Debtor argues the Lease Addendum was an attempt to create a reaffirmation of existing debt pursuant to Section 524(c) and (d), but a failed attempt to do so.

**950**

tors." S.Rep. No. 65, 98th Cong., 1st Sess. 59, 60 (1983).

The situation before this Court is a very different situation. Neither the language of the Code, nor the intent of its drafters, supports the Debtor in this case. In the within case, the Court is not faced with a debtor seeking protection from an over-reaching creditor. Here, the Debtor, a sophisticated, experienced businessman, knowingly and willingly entered into an agreement, the Lease Addendum, with the Creditor to adopt and continue an existing Lease which was not in default and not assumed by the Trustee. Whereas, Section 524 is, essentially, meant to protect a debtor who unwittingly enters into, or has been coerced into executing, a reaffirmation agreement, this Debtor is a very different person. As drafted and intended, the provisions of Section 524(c) are a shield to protect the Debtor. Here, this Debtor is attempting to use the reaffirmation provisions of the Bankruptcy Code as a sword against the Creditor rather than the shield that was intended.

There is a dearth of case law to guide the Court on this question, but the reasoning and decision in *In re Button*, 18 B.R. 171 (Bankr.W.D.N.Y.1982) are instructive and useful. As in this case, the debtor in *Button* claimed that a post-petition agreement was not binding and was not enforceable by the creditor because it was, essentially, a reaffirmation agreement of dischargeable debt that was not correctly consummated in accordance with Section 524(c). The Court in *Button* ruled that where a post-petition agreement between a Chapter 7 debtor and a creditor is entered into and the agreement is supported by good and substantial post-petition consideration, then it is binding and enforceable against the

debtor even though it is founded, in part, on a dischargeable pre-petition debt.

This Court agrees. Where, as here, an informed Chapter 7 debtor elects, post-petition, to adopt and continue a pre-petition lease agreement rejected by the trustee, and there is legally sufficient post-petition consideration between the parties, then the lease will be deemed a binding, enforceable post-petition obligation of the debtor. It will not be deemed or construed to be a reaffirmation agreement subject to and contingent on Section 524(c) and (d). This reasoning and result is particularly appropriate where, as here, the Debtor evidently acted with assistance or access to his counsel and the Lease was not in default.[7]

Those available reported cases, under the Bankruptcy Code, which hold that a post-petition agreement based primarily on pre-petition dischargeable debts are unenforceable because they are subject to Section 524, are distinguishable and are not controlling or persuasive in the instant case. *See, e.g., In re Gilliland*, 62 B.R. 587 (Bankr.D.Neb.1986); *In re Gardner*, 57 B.R. 609 (Bankr.D.Me.1986). Those cases do *not* involve, as here, (a) characteristics of executory contract or unexpired lease obligations, (b) a post-petition *lease* agreement, and (c) new and substantial post-petition consideration and benefits flowing from the creditor to the debtor. Where these elements are present, a debtor's post-petition agreement may be deemed not subject to Section 524(c) and will be binding on and enforceable against the debtor.[8]

Parties who have engaged in contractual relations prior to the filing of a bankruptcy petition may enter into a new agreement which is effective after the date of the petition without obtaining authorization from the Bankruptcy Court. *In re White Motor Corp.*, 831 F.2d 106 (6th Cir.1987).

7. Some courts have even gone so far to conclude that Section 524(c) "has absolutely no application to ..." situations similar to this case. *In re Jeurissen*, 85 B.R. 531 (Bankr.D. Minn.1988).

8. The Tenth Circuit's recent case affirming this Court, *Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989), further weakens the Debtor's argument. The Tenth Circuit held that

under certain circumstances, a debtor that is not in default, but is current and complete in all of its obligations in the original contract, does not need to reaffirm that debt with the creditor. While this Tenth Circuit decision admittedly did not deal with the particular situation faced here of a Lease, the Tenth Circuit's logic and analysis nevertheless applies.

In the within case, Peterson and Slezak entered into a new agreement, the Lease Addendum, after the Order for Relief and the bankruptcy discharge had entered. The Debtor executed a new agreement, post-petition, paid monthly rent, and received the benefits of occupying the premises for almost two years. The only explanation for the Debtor's continued occupancy and payment of rent is that the Debtor considered the Lease Addendum to be a new, binding, enforceable and, significantly, beneficial agreement. The Debtor complied with and performed pursuant to the provisions of the Lease Addendum for almost two years, from April 1, 1987 through February, 1989. The Debtor cannot now, either under the Bankruptcy Code or in good faith, deny the existence or enforceability of the Lease Addendum.

### III. *Creditor's Conduct Did Not Constitute Contempt.*

The Court finds it disingenuous for the Debtor, after abiding by the terms of the Lease Addendum for such a long period of time, to now seek to find the Creditor in contempt of Court for his treating the Lease Addendum between the Debtor and the Creditor to be valid, binding and enforceable. This Court finds that there has been no willful or knowing violation of the discharge injunctive provisions of Section 524 or of any other provision of the Bankruptcy Code. No grounds exist for finding this Creditor in contempt of Court. *In re Chase and Sanborn Corp.*, 872 F.2d 397 (11th Cir.1989). The Creditor's filing of the state court action was a legitimate and justified attempt to collect what the Creditor believed to be and what this Court deems to be, a valid post-petition debt of the Debtor.

IT IS THEREFORE ORDERED that the April 1, 1987 Lease Addendum between Slezak and Peterson was not subject to and rendered unenforceable for failure to comply with 11 U.S.C. § 524(c); it is, rather, a valid, post-petition contract obligating each of the parties to its provisions.

IT IS FURTHER ORDERED that the Debtor's Motion to Show Cause Why Creditor Should Not be Held in Contempt is hereby DENIED.