In re Joel STEVENS, Debtor.

LIPTZ & ROBERTS, CHARTERED
PENSION PLAN TRUST, et al.,
Plaintiffs,

v.

Joel STEVENS, Defendant.

Joel STEVENS, Counter–Plaintiff,

v.

Sheldon J. LIPTZ, et al., Counter–
Defendants.

Bankruptcy No. 94–13972–DK.
Adversary No. 97–1144–DK.

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

March 19, 1998.

Harold Krauthamer, Rachel L. Gold, Chevy Chase, MD, for Plaintiff.

Merrill Cohen, Bethesda, MD, for Defendant and Counter–Plaintiff.

## MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

The court has considered Plaintiffs' motion for summary judgment and Defendant's opposition thereto, as well as Defendant's motion for summary judgment and Plaintiffs' reply. The court finds that the facts and legal arguments are adequately presented in the materials before it, and that a hearing would not aid in the decisional process. For the reasons set forth below, Plaintiffs' motion for summary judgment is granted in part and denied in part and Defendant's motion for summary judgment is granted in part and denied in part.

Plaintiffs and Counter–Defendants in this declaratory judgment action are Liptz & Roberts, Chartered Pension Plan Trust ("LRPPT") and Mr. and Mrs. Sheldon Liptz (the "Liptzes") (together referred to as "Plaintiffs"). Plaintiffs seek a declaratory judgment finding certain promissory notes to be valid post-petition debts that were not discharged in bankruptcy. The Defendant and Counter–Plaintiff is Joel Stevens ("Debtor"), a chapter 7 debtor who received a discharge on December 16, 1994. On March 14, 1997, the court reopened Debtor's bankruptcy case pursuant to his request and in order to litigate these issues now before the court.

In April 1989, Debtor and his wife, Essie Stevens, borrowed $50,000.00 from each of LRPPT and the Immergut, Gilbert, Sher, & Ratner, M.D., P.A. Retirement Plans, in order to purchase a residence ("Residence").[1]

---

1. Debtor's Exhibits 5 and 6 (labeled Purchase Money Deed of Trust).

Mr. Liptz was Debtor's accountant and Immergut, Gilbert, Sher, & Ratner, M.D., P.A. Retirement Plans was another of Mr. Liptz's clients. Debtor and Essie Stevens gave said creditors a single purchase money deed of trust on the Residence and the notes bore a 14.75% interest rate. A superior mortgage existed in favor of Marine Midland.

Debtor and Essie Stevens divorced in 1992. Pursuant to their separation agreement, Debtor agreed to maintain payments on the Residence for three years at which time the Residence would be sold or the couple would share the expenses of ownership.[2] Debtor's financial situation began to deteriorate and at one point in time he owed approximately $200,000 in unpaid taxes to the IRS and State of Maryland. On July 17, 1994, Debtor filed bankruptcy in this court under Chapter 7.

In September of 1994, the first trustholder on the Residence obtained relief from the automatic stay allowing it to commence foreclosure proceedings. Meanwhile, Debtor and Essie Stevens received an offer on the Residence at a price that was sufficient to satisfy the first trustholder, but insufficient to satisfy the second trustholders. Debtor contacted Mr. Liptz regarding a release of the second deed of trust.[3]

Shortly thereafter, the Liptzes paid $50,000.00 to Immergut, Gilbert, Sher, & Ratner, M.D., P.A. Retirement Plans in exchange for its note. Debtor and Essie Stevens then executed new promissory notes in the amounts of $55,401.00 and $59,074.45, bearing annual interest at a rate of 11% ("Promissory Notes") in exchange for Plaintiffs' release of their lien on the Residence.[4] Debtor also signed a letter purporting to "reaffirm" the debts (the "Letter").[5] The Letter con-

tains language similar to that found in reaffirmation agreements, such as notice that the agreement can be rescinded by the Debtor within sixty days and a statement that Debtor has consulted an attorney and is entering into the agreement against the advice of his attorney.[6] Neither the Letter nor the Promissory Notes were filed with the court. Debtor received his bankruptcy discharge pursuant to 11 U.S.C. § 727 on December 16, 1994. Because Plaintiffs' had released their lien on the Residence, the original notes were unsecured and Debtor's obligation on the underlying debts was discharged. 11 U.S.C. § 727(b).

Over the next 23 months, Debtor made approximately 13 payments on the Promissory Notes. Essie Stevens filed bankruptcy in January 1997, and received a discharge. Plaintiffs obtained a confessed judgment based on the Promissory Notes in Circuit Court for Montgomery County. The Circuit Court granted a motion by Debtor to vacate the confessed judgment. Debtor then sought to have his bankruptcy case reopened. Plaintiffs filed this adversary proceeding and at the conclusion of discovery, they filed the instant motion for summary judgment.

Plaintiffs seek a declaratory judgment pronouncing the Promissory Notes post-petition debts supported by "new" consideration and therefore not subject to Debtor's 1994 bankruptcy discharge. Plaintiffs further request a declaration that they did not violate the automatic stay, and an order closing Debtor's bankruptcy case thereby allowing Plaintiffs to pursue their pending state court action.

Debtor counterclaims seeking an order declaring the Promissory Notes invalid attempts at reaffirming otherwise dischargeable debts. Debtor also seeks compensatory

---

**2.** Plaintiffs' Exhibit I (labeled Separation Agreement).

**3.** Plaintiffs' Exhibit A, at ¶ 32 (labeled Affidavit of Sheldon Liptz).

**4.** Debtor's Exhibits 10 and 11 (labeled Negotiable Promissory Note).

**5.** Debtor's Exhibit 12 (Letter by Joel Stevens dated September 26, 1994).

**6.** Debtor asserts in his Answer to Plaintiffs' Complaint that he was wrongfully coerced into sign-

ing the Promissory Notes and Letter without the advice of counsel. Debtor did not reallege coercion in his affidavit in support of his motion for summary judgment. Further, Debtor supplied the court with the Letter, signed by Debtor and notarized, stating that Debtor sought the advice of counsel and chose to act in derogation of that advice. Based on the exhibits and affidavits supplied by the parties, this court does not make a finding that Debtor was coerced into signing the documents.

damages for past payments, legal fees and punitive damages in the amount of $100,-000.00.

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Sylvia Dev. Corp. v. Calvert County, Maryland,* 48 F.3d 810, 817 (4th Cir.1995). In considering a motion for summary judgment the court must view all permissible inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir.1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). Summary judgment is appropriate only if, taking the record as a whole, a reasonable jury could not possibly return a verdict in favor of the non-moving party. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. at 1356; *Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The question to be decided on summary judgment is whether the Promissory Notes executed by Debtor and Essie Stevens constitute new post-petition obligations that were not discharged pursuant to 11 U.S.C. § 524, or whether the documents constitute an unenforceable reaffirmation of a dischargeable pre-petition debt.

■ Subsections (c) and (d) of section 524 set forth the requirements for reaffirming a debt. If the requirements of the subsections are not complied with, the reaffirmation agreement will not be enforced. Courts apply the statute strictly to prevent coercive acts by creditors seeking to secure reaffirmation. As the Honorable Douglas Tice wrote in *In re Catron,* 186 B.R. 194, 196 (Bankr. E.D.Va.1995):

In order to waive the discharge of a particular debt, the debt must be reaffirmed pursuant to 11 U.S.C. § 524 regardless of any agreement to except the debt from discharge. A contrary holding would be in direct conflict with the intent of Congress to give debtors a fresh start. Thus, any waiver of the discharge of a particular debt must follow the procedures prescribed in the bankruptcy code and bankruptcy rules.

(citations omitted).

■ Are the Promissory Notes an attempted reaffirmation or new contracts? By definition, a reaffirmation agreement is "[a]n agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title…." 11 U.S.C. § 524(c) (in part). Thus, unless the court finds that the Promissory Notes are not in any way supported by a promise by Debtor to pay the obligation due under the original notes, the Promissory notes cannot be found valid and enforceable.

In arguing their case, Plaintiffs rely on several cases that find the existence of new consideration sufficient to create a new contract. *See In re Watson,* 192 B.R. 739 (9th Cir. BAP 1996); *Minster State Bank v. Heirholzer, (In re Heirholzer),* 170 B.R. 938 (Bankr.N.D.Ohio1994); *In re Petersen,* 110 B.R. 946 (Bankr.D.Colo.1990); *In re Button,* 18 B.R. 171 (Bankr.W.D.N.Y.1982). This court does not find the analyses in these cases to be instructive or persuasive primarily because the cases focus only on the existence of new consideration rather than whether the former discharged obligation constituted any part of the consideration.

For example, in *Heirholzer, supra,* after receiving a discharge, the debtor executed a new note with an accompanying second mortgage in exchange for creditor's promise to refrain from foreclosing on debtor's residence. *Id.* at 939. The court determined that the most important factor in ascertaining whether a contract is a new contract or merely an invalid attempt at a reaffirmation agreement is "the existence of some separate consideration for the subsequent agreement." *Id.* at 940. The court held that after the automatic stay was dissolved by debtor's discharge, the bank had a legitimate right to

foreclose and that its promise not to foreclose was adequate consideration. *Id.* at 941.

It appears to this court that Plaintiffs and the *Heirholzer* court take the opposite approach to § 524(c), than that which is intended by Congress. In fact, the statute places little emphasis on whether the new consideration is sufficient, rather the thrust of the issue is whether any part of the consideration is based on a debt that is otherwise dischargeable.

Plaintiffs further rely on *Petersen, supra.* In *Petersen,* while the court recognized that the purpose of strict reaffirmation requirements is to protect debtors, it ruled that the particular debtor did not need protection from an overreaching creditor. *Id.* at 950. The court did not cite any authority for its suggestion that § 524 is not applicable to sophisticated debtors. Further, because the court found the existence of legally sufficient post-petition consideration, it did not construe the contract as a reaffirmation agreement. The court explained its divergence from other cases by maintaining that the other cases on the issue did not involve post-petition lease agreements and new and substantial post-petition consideration. *Id.*

■ Relying on the aforementioned cases, Plaintiffs argue that the Promissory Notes cannot be reaffirmation agreements because new consideration existed. The court agrees with Plaintiffs and finds that new consideration did exist in the agreement between the parties.[7] Indeed, the Plaintiffs released their lien on the Residence, thus suffering a detriment that would constitute sufficient consideration. However, § 524(c) does not state that which the *Heirholzer* court implies— that the existence of new consideration takes the agreement out of a § 524 examination. Instead, § 524(c) specifically states if the consideration "in whole *or in part,* is based on a debt that is dischargeable," the agreement must comply with the reaffirmation requirements (emphasis added). In this case, although new consideration exists, part of the consideration for the Promissory Notes is the promise by Debtor to repay a debt that would soon be discharged. The

Letter signed by Debtor at the same time as the Promissory Notes reflects the fact that the pre-petition (dischargeable) obligation was a significant part of the consideration for the Promissory Notes. The Letter states in part:

These notes are being substituted for notes dated April 10, 1989....

....

Although I have filed for bankruptcy, this will not effect the repayment of these debts. By signing this letter I am reaffirming these debts pursuant to Section 524(c) and (d) of the United States Bankruptcy Code.

■ While this court may be sympathetic to Plaintiffs' situation, the court cannot exercise its equitable powers in contradiction of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). The Code provides a specific procedure for debtors who wish to reaffirm their obligations. Unlike the court in *Petersen, supra,* this court does not find that § 524 applies only to unsophisticated creditors in need of protection. Section 524 lists no exceptions to the reaffirmation rules.

Accordingly, the court finds that the Promissory Notes constitute invalid attempts to reaffirm pre-petition obligations which have been discharged in this bankruptcy case. Section 11 U.S.C. § 524(a) prohibits the collection of the Promissory Notes. Summary judgment on this issue will be granted in favor of Defendant and denied as to Plaintiffs.

■ The court's analysis does not end here. Debtor did not limit his requested relief to a judgment in his favor on the issue of discharge. Debtor filed a counterclaim and motion for summary judgment seeking a refund of monies paid to Plaintiffs since his 1994 discharge, as well as attorneys' fees and $100,000.00 in punitive damages for the "wilful, knowing and repeated violations of the discharge provisions of 11 U.S.C. Section 524."

---

7. As stated in *Shimp v. Shimp,* 412 A.2d 1228, 1234, 287 Md. 372, 385 (1980), valuable consid-

eration consists of "either detriment to the promisor or benefit to the promisee...."

In *Brantley v. Weeks, (In re Brantley)*, 116 B.R. 443 (Bankr.D.Md.1990), the court discussed a somewhat analogous situation. The court reasoned that because a discharge order acts as an injunction against efforts to collect debts from the debtor, any action to collect discharged debts violates that injunction. *Id.* at 448. In *Brantley*, the court ordered the return of the amount collected post-discharge as the "minimum necessary to cure defendants' violations of the discharge injunction...." *Id.* The court found that the violation of the injunction was wilful, knowing and injurious to the debtor.

In this case, although the Debtor alleges that Plaintiffs violated the injunction wilfully and knowingly, the undisputed evidence does not support such a finding. There is no showing by Debtor that during the time he was making payments on the Promissory Notes, Plaintiffs knew that they were in violation of § 524(a). Furthermore, the uncontradicted evidence reflects that all the payments were voluntarily made, without any collection activity by the Plaintiffs. Section 524(f) reads: "Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt." Debtor, a medical doctor, signed the Promissory Notes on his own initiative. As the court now finds the discharge order discharged the debt under the Promissory Notes, action to collect that debt is barred. However, the court will not punish Plaintiffs for accepting payments based on an agreement that all parties believed to be a valid and enforceable contract and which was fully performed by Plaintiffs. To order the return of the payments under the circumstances of this case would be inequitable.

The court similarly denies Debtor's prayer for attorneys' fees. As stated by the First Circuit Court of Appeals in *Cordeco Development Corp. v. Santiago Vasquez*, 539 F.2d 256, 263 n. 11 (1st Cir.1976), *cert. denied*, 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976): "Subject to the traditional 'judicially fashioned exceptions', to which Congress is deemed to have acquiesced, federal courts are not free to award fees to litigants except under the authority of a statute."

(citation omitted). There are three judicially created grounds for awarding attorneys' fees outside of a statute or contract providing for such: "(1) when the litigant preserves or recovers a fund for the benefit of others; (2) when a losing party acts in bad faith, vexatiously, wantonly, or for oppressive reasons; or (3) when a defendant wilfully disobeys a court order." *Brantley, supra*, at 449 citing *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). While no express provision in § 524 authorizes an award of attorneys' fees, such an award would be appropriate for wilful and intentional violations of the discharge order. As discussed previously, the undisputed facts of this case do not support such a finding.

Moreover, Debtor has made no evidentiary or legal showing as to why he would be entitled to such a draconian remedy as punitive damages under these facts. Punitive damages "are only to be awarded where an act is done intentionally and without just cause." *Public Finance Corp. of Rhode Island v. Walker, (In re Walker)*, 7 B.R. 216, 222 (Bankr.R.I.1980). In order for this court to award Debtor punitive damages, Debtor would have to prove that Plaintiffs acted with malevolent intent. *Brantley, supra*, at 449. The court, viewing the undisputed facts in the light most favorable to the non-moving party (in this instance, the Plaintiffs), cannot find any sanctionable conduct on the part of Plaintiffs. It is stated by way of affidavit that Plaintiffs believed the Promissory Notes to be enforceable and not subject to Debtor's discharge.[8] Debtor has offered no statement or evidence to rebut this statement. Accordingly, punitive damages will be denied.

Finally, although the Debtor did not assert a wilful violation of the automatic stay, Plaintiffs have requested a determination that none exists. The undisputed facts show no basis for a finding of the violation of stay. No averment of facts exists to support a finding of an act to collect while the stay imposed by 11 U.S.C. § 362(a)(6) was extant. The automatic stay terminated as to collec-

---

**8.** Plaintiffs' Exhibit A (labeled Affidavit of Sheldon Liptz).

tion from the Debtor (but not the property of the estate) [9] upon the entry of discharge. 11 U.S.C. § 362(c)(2)(C). Hence, this court must and does find that no violation has occurred.

---

9. The automatic stay terminates as to collection against property of the estate when subject property ceases to be estate property. 11 U.S.C. § 362(c)(1). No evidence nor averment has been filed asserting that any collection against estate property occurred.