# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AUXIER FINANCIAL GROUP LLC, | ) | No. 71729-4-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOSEPH T. SELLARS AND | ) | |
| GREGORY GREENE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents. | ) | FILED: June 29, 2015 |

SPEARMAN, C.J. — Respondent Joseph Sellars executed a promissory note (the "Note") in favor of Chase Bank, secured by a deed of trust (on property that he co-owned with respondent Gregory Greene. The deed of trust listed Greene and Sellars as parties. Sellars had previously declared bankruptcy and discharged his liability on the loan. Chase later assigned its interest in the Note and the deed of trust to appellant Auxier Financial Group, LLC (Auxier). Auxier sought to collect on the Note, claiming that Sellars had reaffirmed his discharged debt through later statements in a different court case. Auxier also sought to collect escrow fees from Greene under the deed of trust and judicially foreclose on the property. Greene disputed that he signed the deed of trust but made no objection to its validity or enforceability. The trial court granted summary judgment in favor of respondents, dismissing all of Auxier's claims against Sellars

and Greene, but permitted Auxier to foreclose on the deed of trust. Auxier appeals, claiming that (1) Sellars' debt should not have been discharged, (2) Greene was personally liable under the deed of trust, and (3) the trial court erred in splitting the foreclosure from the monetary claims. We find no error in these rulings and affirm, but remand to address issues regarding the awards of attorneys' fees to Sellars and Greene.

## FACTS

On or about February 22, 2007, respondent Joseph Sellars borrowed $298,000.00 from Washington Mutual and executed a promissory note (Note) for that amount. The Note was secured by a deed of trust encumbering real property commonly known as 2525 Center Road in Everett, Washington (Property). Sellars co-owned the Property with respondent Gregory Greene.

While Sellars was the only signer of the Note, the deed of trust defined the "Borrower" under the Note as both Sellars and Greene. The deed of trust appeared to be signed and notarized by both Sellars and Greene.

The deed of trust contained a provision titled "Joint and Several Liability, Co-signers, Successors, and Assigns Bound," which stated:

> Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs the Security Instrument but does not execute the Note (a "co-signor") (a) is co-signing this Security Instrument only to mortgage, grant, and convey the co-signor's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

2

Clerk's Papers (CP) at 588. The deed of trust also required the Borrower to pay funds for "Escrow Items," which included taxes and assessments, leasehold payments, insurance payments, and other amounts. CP at 582. The Borrower's obligation to make such payments is deemed to be a covenant or agreement under the deed of trust, the performance of which was secured by the deed of trust. The proceeds of any sale would be applied first to the expenses of the sale, then to all sums secured by the deed of trust, and then any excess to persons legally entitled or to the clerk of the county superior court.

On or about September 8, 2008, Washington Mutual was seized by the Federal Deposit Insurance Corporation (FDIC) and the Note and the deed of trust were transferred to JP Morgan Chase Bank (Chase). Sellars filed for Chapter 7 bankruptcy on April 30, 2010. Chase was listed as one of Sellars' creditors and received notice of the bankruptcy on May 5, 2010. Sellars' debt under the Note was discharged on August 11, 2010. No challenges were made to the dischargeability of his debt.

At some point appellant Auxier Financial Group, LLC (Auxier) claimed an interest in the Property, the basis for which is not determinable from the record. Auxier filed a lawsuit in December 2010, <u>Auxier Financial Group LLC, et. al v. Quality Loan Service Corp. of Washington, et. al.</u>, W.D. Wash. No. 2:10-cv-02070-MJP, asserting claims against Chase as Trustee arising from the Note and deed of trust.[1] Greene and Sellars filed declarations in which they testified about their ownership interest in the Property, their execution of the deed of trust,

---

[1] The record contains no documents from this case other than redacted declarations from Greene and Sellars.

3

and Sellars' liability on the Note. Neither Sellars nor Greene were named as parties in that lawsuit.

On April 26, 2012, Chase assigned its interest in the Note and the deed of trust to Auxier. On October 19, 2012, Auxier filed a complaint for a money judgment against Sellars based on the Note, against both Greene and Sellars for escrow fees under the deed of trust. Auxier also sought a judicial foreclosure of the deed of Trust and an order directing a deficiency judgment against Sellars and Greene for any amount that remained unsatisfied after the sale. Sellars answered and filed a cross claim against Greene for liability on the underlying loan. Greene filed his own cross claim against Sellars, alleging that Sellars forged the documents and conveyed the Property without authority. Greene also submitted a declaration and multiple documents to show that his authorized signature was not the same as the one on the deed of trust. Auxier submitted evidence from the above-referenced federal court case where Greene testified that he was a party to the deed of trust.

The parties filed cross motions for summary judgment and for dismissal of Auxier's claims. The trial court granted summary judgment in favor of both defendants and dismissed all of Auxier's monetary claims against both Sellars and Greene. The trial court also granted Auxier the right to foreclose on the deed of trust, provided that Auxier refrain from seeking a judgment in any amount against Sellars. The trial court also awarded fees to both defendants.

At oral argument before this court, both Auxier and Greene stated that they understood the trial court's order to permit Auxier to foreclose on Sellars'

interest only. Counsel for Greene signed the trial court's order, which did not make any reference to foreclosing Sellars' interest only. The trial court's order stated:

> Plaintiff may proceed with a judicial foreclosure of the deed of trust attached as Exhibit B to its complaint, PROVIDED that it refrain from seeking a judgment in any amount against Defendant Joseph T. Sellars. This order does not impact Plaintiff's ability to proceed with a non-judicial foreclosure per RCW 61.24.

CP at 7-13. The trial court denied Auxier's motion for reconsideration. Auxier appeals.

## DISCUSSION

Because this appeal arises from the trial court's entry of summary judgment, we review de novo, engaging in the same inquiry as the trial court, i.e., summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hertog, ex rel. S.A.H. v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999) (citing Taggart v. State, 118 Wn.2d 195, 199, 822 P.2d 243 (1992); CR 56(c)). We construe all facts and reasonable inferences from the facts in the light most favorable to the nonmoving party. Id. (citing Taggart, 118 Wn.2d at 199). Questions of law are reviewed de novo. Sherman v. State, 128 Wn.2d 164, 183, 905 P.2d 355 (1995).

### A. Auxier's claims against Greene under the deed of trust

Auxier argues that by signing and/or admitting to being a party to the deed of trust, Greene is bound by its terms and jointly and severally liable for $7,644.84 in escrow fees. Greene disputes that he has any personal liability because the signature on the deed of trust is not his. Auxier submits deposition

5

testimony from multiple witnesses about Greene signing the deed of trust, and also submits Greene's own declaration where he states that he was a party to the deed of trust. Auxier claims that the trial court erred in granting summary judgment because the dispute over Greene's signature, at the very least, creates an issue of fact with regard to whether he is bound by its terms.

To avoid summary judgment, the disputed factual issue must be material. A material fact is one upon which the outcome of the litigation depends. Cotton v. Kronenberg, 111 Wn. App. 258, 264, 44 P.3d 878 (2002). Here, Greene's signature on the deed of trust is not a material fact because, even if valid, it does not give rise to Greene's personal liability on the Note. Auxier's claim against Greene is for "the escrow fees advanced in the sum of $7,644.84." CP at 570. The deed of trust expressly states that a co-signer only conveys his or her interest in the Property as security and is not personally obligated to pay the sums secured by the deed of trust, which include the escrow fees.

Auxier makes a number of arguments as to why Greene is bound by the deed of trust's terms, and therefore Auxier is entitled to a money judgment. All of these arguments fail to raise an issue of material fact, however, because under the terms of the deed of trust, Greene only conveyed his interest in the Property and was not personally liable for any sums secured by the deed of trust.

B. Auxier's claims against Sellars for liability under the Note

According to Auxier, the facts clearly show that Sellars is in default of his obligations under the Note, that Auxier owns and holds the Note and the deed of trust, and that Auxier has the right to enforce its interests via judicial foreclosure.

Sellars argues that his obligations under the Note were discharged in bankruptcy. Auxier argues that Sellars made statements that indicated he was still liable for the loan, and Auxier relied on those statements.[2]

When a debtor is discharged under the bankruptcy code, the discharge operates as a permanent injunction against any attempt to collect or recover on a debt. 11 U.S.C. §523(c)(1). Reaffirmation of debt is governed by 11 U.S.C. §524(c);[3] reaffirmation agreements between debtor and creditor are strictly construed and the letter of the law must be followed in order for reaffirmation agreement to be effective. In re Petersen, 110 B.R. 946, 949 (Bankr. D. Colo. 1990). Pursuant to §524(c) and (d), there are five requirements that must be fulfilled in order to properly reaffirm a previously discharged debt: (1) the

---

[2]Auxier also argues that Sellars should be estopped from claiming that his obligations under the Note have been discharged, because Auxier relied on Sellars' testimony that he was "still on the hook for the Loan." CP at 330. Auxier did not suggest which theory of estoppel, promissory or equitable, was applicable. We find that neither type of estoppel applies, because Auxier does not and cannot argue that the statements in Sellars' declaration created a promise, and Auxier cannot rely on equitable estoppel as the basis for an action for damages. See Mudarri v. State, 147 Wn. App. 590, 619, 196 P.3d 153 (2008).

[3] 11.U.S.C. §524 (c)
An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—
(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
(2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;
(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—
    (A) such agreement represents a fully informed and voluntary agreement by the debtor;
    (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
    (C) the attorney fully advised the debtor of the legal effect and consequences of—
        (i) an agreement of the kind specified in this subsection; and
        (ii) any default under such an agreement;

agreement must be made prior to discharge; (2) the agreement must advise the debtor that the reaffirmation may be rescinded up to sixty days after it is filed; (3) the agreement must be filed with the court; (4) the debtor cannot already have rescinded the agreement within the proper time frame; and (5) the agreement must be in the best interest of the debtor. In re Getzhoff, 180 B.R. 572, 574 (9th Cir. BAP 1995) (citing In re Heirholzer, 170 B.R. 938, 940 (N. Ohio 1994)).

Under 524(c), any agreement to reaffirm a dischargeable debt, when the consideration is no more than the promise to repay the debt, must be made before the granting of the bankruptcy discharge. In re Heilman, 430 B.R. 213, 220 (9th Cir. BAP 2010). Furthermore, the agreement must be approved by the bankruptcy court, which would determine that the debtor (1) knowingly and voluntarily entered into the agreement, (2) understood all of its legal consequences, and (3) that the agreement did not impose an undue hardship on the debtor. Id.

Parties who have engaged in contractual relations prior to the filing of a bankruptcy petition do not need authorization from the bankruptcy court to enter into a new agreement, which will be effective after the date of the petition. Petersen, 110 B.R. at 950. In that case the debtor and creditor executed a new Lease Addendum after the order for relief and discharge had been entered. Id. Under the new agreement, the debtor paid monthly rent and received the benefits of occupying the premises for almost two years. Id. The debtor complied with the Lease Addendum and considered it to be a new, binding, enforceable,

and significantly, a beneficial agreement. Id. at 951. The debtor was not permitted to deny its existence or enforceability. Id.

Here, Auxier does not claim, and the record does not show, that Sellars ever signed a reaffirmation agreement. Nor does Auxier cite any authority to support the notion that a declaration, answer or prior oral statement is enough to reaffirm a discharged bankruptcy debt.[4] Moreover, 11 U.S.C. §524(c)(3), requires strict compliance with the statutory requirements to revive a discharged debt. Because Auxier fails to make such a showing, we conclude that Sellars' statements in his declaration are insufficient to revive his obligations under the Note.

Auxier argues that reaffirmation is not required where admissions against interest or the discovery of other evidence support post bankruptcy claims that the debt is nondischargeable. Auxier further argues that Greene's allegations of forgery in this case create an issue of fact as to whether the debt was fraudulent and thus, nondischargeable. Neither argument is persuasive.

Fraudulent debts will be discharged unless the creditor requests a hearing and the bankruptcy court determines that the debt is exempted as a result of being obtained by false pretenses, false representations, or actual fraud. See §523 (1)(c). Thus, even accepting Auxier's claims as true, absent a determination by the bankruptcy court that the debt was exempt, the trial court had no authority

---

[4] Sellars also argues against the possibility that this declaration somehow waived the discharge, because even if it did, Auxier could not obtain a judgment against him. We agree. Any judgment obtained for a debtor's personal liability for a discharged debt would be void regardless of "whether or not discharge of such debt is waived." 11 USC §524(a).

to re-determine the dischargeability issue. Determinations of nondischargeability under section 523(a) are obtained via declaratory judgment and are the exclusive jurisdiction of the bankruptcy court. Fed. Rules Bankr. Proc. Rules 7001(6) and (9); In re Franklin, 179 B.R. 913, 920 (9th Cir. BAP 1995).

B. Awards of Attorneys' Fees

We review a trial court's award of attorney fees and costs for abuse of discretion. In re Recall of Pearsall-Stipek. 136 Wn.2d 255, 265, 961 P.2d 343 (1998). In his motion and response to summary judgment, Greene asked for an award of attorneys' fees of $2,250 and $3,773 "pursuant to equity and reciprocity where Plaintiff has continued to press the attorney's fees provision of the DoT which my client did not sign." CP 528. The deed of trust provides that "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Agreement." CP at 592.

RCW 4.84.330 allows for an award of fees to the prevailing party based on such a clause. The statute reads:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

Under the language of the deed of trust and the statute, an award of attorneys' fees is mandatory for an action to construe or enforce a provision of the deed of trust. Even though Greene argues that he did not sign the deed of

10

trust (and presumably that he is not a party to it), he is still entitled to an award as the prevailing party under the statute and the deed of trust. The trial court has the power to limit an award of attorney's fees to a reasonable sum, but this power does not extend to allow the complete denial of attorney's fees where the contract provides for their award. Singleton v. Frost, 108 Wn.2d 723, 730, 742 P.2d 1224 (1987). We find that the trial court did not err in awarding fees to Greene as the prevailing party.

While the trial court's order provisionally stated that Greene would be awarded fees in the amount of $10,598, final judgment was reserved until Greene applied for an award in that amount. At that time Auxier may object to the amount as being unreasonable or excessive. We find Auxier's assignment of error to be premature because the trial court has not yet ruled on the amount of fees.

Auxier argues that the award of attorneys' fees to Sellars was unreasonable because the fees incurred were related to Sellars' admissions against interest and his change in position about his liability under the Note. Auxier also argues that the fee award should be reduced because Sellars included time spent on Greene's claims. Sellars argues that the trial court was within its discretion to award fees and that Auxier waived its objections to specific time entries and amounts because it failed to bring them before the trial court. The waiver argument fails because any objections raised before entry of judgment would have been premature. Auxier did object to the reasonableness of the fee award in its motion for reconsideration, even though it did not argue for a

reduction based on the time spent on Greene's motion. We therefore disagree with Sellars' contention that Auxier should be precluded from raising an alternate basis for a reduction in the fee award on appeal.

A trial court's determination of reasonable attorney's fees will not be overturned unless there is manifest abuse of discretion. Rainier Nat. Bank v. Lewis, 30 Wn. App. 419, 424, 635 P.2d 153 (1981). A trial court abuses its discretion when its decision or order is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons. Id. Untenable reasons include errors of law. Noble v. Safe Harbor Family Preservation Trust. 167 Wn. 2d 11, 17, 216 P.3d 1007 (2009).

The fee award is based on RCW 4.84.330 and the Note's provision establishing the holder's "right to be paid back by [Sellars] for all its costs and expenses in enforcing this Note." CP at 575. The trial court awarded an amount based on fees incurred after Sellars' attorney informed Auxier's counsel that the debt had been discharged in bankruptcy. This amount included fees for work related to reviewing Greene's motion for summary judgment.

Greene's motion for summary judgment, however, was for dismissal of Auxier's claims against him under the deed of trust, not for any claims alleged between Sellars and Greene arising from allegations of fraud or Greene's responsibility to Sellars for the debt. The fee provision in the Note applies to the costs and expenses incurred by Auxier and/or Sellars as parties to the Note. Greene was not a party to the Note, even though Sellars claimed he was also liable for the loan and sought a judgment based on equitable indemnity. As a

result, any fees for reviewing Greene's motion for summary judgment should not have been awarded, because they were not related to Auxier's action against Sellars or his liability under the Note. See Tradewell Group, Inc. v. Mavis, 71 Wn. App. 120, 132, 857 P.2d 1053 (1993) (lease provision would not sustain award of fees where tenant's claims against potential purchaser of store had no bearing on lease with landlord).

We therefore remand to the trial court with instructions to revise the fee award to Sellars upon a submission of a revised accounting that omits the time spent reviewing Greene's motion for summary judgment and to determine the amount of the fee award to Greene. We also reverse the award of $240.00 in costs to Sellars[5]

## C. Order granting Auxier the ability to judicially foreclose on the deed of trust.

Auxier claims that the trial court erred when it split the judicial foreclosure cause of action from its claims for monetary judgment against the defendants. Auxier assumes that it is unable to foreclose on Greene's interest because the claims against Greene have been dismissed. At oral argument, Greene's counsel indicated that he understood the order as permitting Auxier to foreclose only on Sellars' half interest in the Property.

Also at oral argument, counsel for Greene indicated that he understood the trial court's order to suggest findings that Greene did not sign the deed of trust and it was therefore unenforceable against his interest in the Property.

---

[5] Sellars concedes that it was error for the trial court to have awarded $240 in costs for filing the cross-claim against Greene.

13

These findings and statements were alleged to have been contained in the trial court's oral ruling.[6] The written order dismissing claims against Greene, prepared by Greene's counsel, states only that "the Defendant's Motion for Summary Judgment is Granted;" and that the "Plaintiff's claims against Defendant, Gregory Greene are dismissed with prejudice, . . ." CP at 4. This order makes no mention of Greene's signature, the deed of trust, the dismissal of any claims brought under it, or limiting its enforceability to Sellars' interest only. The order granting summary judgment in favor of Sellars states "Plaintiff may proceed with a judicial foreclosure of the deed of trust... PROVIDED that it refrain from seeking a judgment in any amount against Defendant Joseph T. Sellars." CP at 12. No restriction was placed on Auxier's ability to foreclose on the Property.

Despite Auxier and Greene's interpretations, the trial court's written orders granted the Auxier the right to judicially foreclose on the Property, with no carve out for Greene's interest, and Greene has not appealed or asked for clarification of the judgment. Greene disputed the validity of his signature but did not dispute that the Property was pledged as collateral for the Note, or that the deed of trust was valid and enforceable. Only once, in his cross claim against Sellars, did Greene assert that "Defendant Sellars conveyed that property without consent or authority." CP at 534. Counsel for Greene argued that the trial court's oral ruling contained findings regarding Greene's signature on the deed of trust and his

---

[6] Counsel for Auxier filed a Statement of Notice of No Verbatim Report of Proceedings or Other Report of Proceedings on August 14, 2014. Because neither party requested that oral argument be recorded, there is no report of proceedings for the trial court's hearing on the motions for summary judgment or the trial court's oral ruling. We therefore are unable to consider anything outside of the trial court's written orders, despite counsel's attestations about what the trial court did or did not find.

conveyance of the Property. There is no ambiguity in the trial court's written order. Without a transcript of the oral ruling, we cannot consider the parties' interpretations when determining the scope of the order. Auxier is entitled to foreclose on the Property in its entirety but cannot revive personal liability for either defendant by proposing that the claims are inextricably linked.

We affirm the trial court's dismissal of monetary claims against Sellars and Greene and the order granting judicial foreclosure. We remand, however for revision of the order and entry of judgment regarding fees and costs.

Specimen, C.J.

WE CONCUR:

Trickey, J.

Cox, J.